

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00374-CV

———————————————

FIAMMA STATLER, LP; FIAMMA PARTNERS, LLC; AND FIAMMA
MANAGEMENT GROUP, LLC, Appellants and Appellees

V.

MATTHEW D. CHALLIS AND JEFFERIES, LLC, Appellees and Appellants

---

On Appeal from the 342nd District Court and the 141st District Court
Tarrant County, Texas
Trial Court Nos. 342-303752-18, 342-294034-17, and 141-294034-17

---

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Memorandum Opinion by Justice Gabriel
Concurring and Dissenting Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

In this appeal, we are asked to decide whether a thirty-one-page petition alleging multiple claims against twelve defendants was subject to dismissal regarding two of those defendants under Rule 91a and, if so, whether the prevailing defendants were entitled to a larger award for costs and attorney's fees. We conclude under the facts of this case that although the petition included a plethora of facts, neither the petition's length nor its substantive allegations saved the claims brought against these two defendants from dismissal under Rule 91a. Therefore, the two defendants were entitled to a mandatory award of all costs and reasonable and necessary attorney's fees. Regarding costs, the trial court erred by awarding a specific amount, which is a ministerial duty reserved for the trial court clerk. Regarding their trial attorney's fees, the two defendants as prevailing parties under Rule 91a were entitled to recover their reasonable and necessary attorney's fees incurred with respect to the challenged causes of action. Because the two defendants supported their request for trial attorney's fees with sufficient proof, the trial court abused its discretion by limiting the recovery solely to those fees tied to filing the successful motion to dismiss. Accordingly, we affirm the trial court's dismissal, but reverse and remand for a redetermination of the specified amounts awarded for costs and for reasonable and necessary trial attorney's fees. *See* Tex. R. App. P. 43.2(a), (d). And although the evidence of conditional appellate attorney's fees was insufficient, that issue must be remanded to the trial court for a redetermination as well.

# I. BACKGROUND

## A. THE PROJECT

This case involves the renovation and reconstruction of the historic Statler Hotel and downtown public library in Dallas (the Project). In 2015, Commerce Statler Development, LLC (the Developer) began to redevelop the Statler Hotel into a hotel, apartments, restaurants, and retail space and to transform the adjacent library building into office space. The Centurion Parties[1] owned 75% of the Developer. The minority interest effectively was owned by appellants Fiamma Statler, LP; Fiamma Partners, LLC; and Fiamma Management Group, LLC (collectively and singularly, Fiamma).

Funding for the Project was accomplished through private and public funds, including special subsidies from tax credits based on the Project's location in a tax-increment finance (TIF) district. Thus, the Project qualified for and received $46 million in TIF funds. PNC Investment Company, LLC purchased the TIF funds for the Project. Other federally regulated loans were obtained through the assistance of A&J Capital Investments, Inc. and Henry Global Consulting.

---

[1]As identified by Appellants in their live pleading, the "Centurion Defendants" were Centurion American Development Group, LLC; TriArc Construction, LLC; 1914 Commerce Leasing, LLC; 1914 Commerce GM, Inc.; Statler Developers, LLC; and Mehrdad Moayedi. The Developer was not included as a Centurion Defendant. For purposes of this opinion and unless otherwise noted, our references to the "Centurion Parties" will track Appellants' definition of the Centurion Defendants in their third amended petition.

The Developer contracted with Statler Developers, one of the Centurion Parties, to oversee "design, construction and development of the Project." The Developer also leased the Project to 1914 Commerce Leasing, another Centurion Party, which then entered into an omnibus management agreement for the Project with Fiamma Management.

When construction of the Project's exterior was nearing completion, the Centurion Parties selected one of their own—TriArc—to be the manager and general contractor to finish out the interior. When Fiamma balked and questioned TriArc's selection, 1914 Commerce Leasing terminated its property-management agreement with Fiamma Management. Under TriArc's management, the interior finish-out costs increased significantly.

These and other cost overruns spurred the Centurion Parties to attempt to sell the TIF funds in a public-bond offering. In August 2016, appellee Jefferies, LLC and its senior vice president, appellee Matthew D. Challis, brokered and underwrote a bond sale, preparing an offering memorandum (the Offer) that included representations about the nature of the Project and offering $41 million of the TIF funds for sale. *See* 17 C.F.R. § 240.15c2-12(f)(8) (2018). The funds were offered to and sold to Wisconsin for $26 million.

## B. THE LAWSUIT

The increased costs, the end of the management contract with Fiamma Management, the handling of the funds received from public sources, and the TIF sale

4

soured the relationship between Fiamma, the Centurion Parties, and the Developer. This led to a long and convoluted litigation history involving several amended petitions, nonsuits, and an array of ever-shifting claims and allegations, all occurring before any significant discovery was conducted.

### 1. Multiple Petitions and Initial Motions to Dismiss

In December 2016, Fiamma petitioned the 348th District Court of Tarrant County for an order allowing Fiamma to investigate possible claims against A&J. *See* Tex. R. Civ. P. 202.1. Fiamma twice amended its petition to add as defendants PNC and Jefferies. On May 8, 2017, the trial court denied Fiamma's petition. *See* Tex. R. Civ. P. 202.4(a).

On July 31, 2017, Fiamma filed suit against several parties involved in the Project, including Jefferies and Challis (the Underwriters); the suit was assigned to the 141st District Court of Tarrant County.[2] Against the Underwriters, Fiamma alleged claims for

- aiding and abetting breach of fiduciary duty and

---

[2]The Underwriters ascribe questionable motives to Fiamma's filing suit in Tarrant County where Challis resides, instead of in Dallas County where the Project is located, because of "[t]he infrequency [in Tarrant County] of multi-party, complex commercial disputes in which plaintiffs seek $100 million exclusive of punitive damages." But we are confident, even if the Underwriters are not, that the trial judges of Tarrant County are as equipped and qualified as are the trial judges of Dallas County to handle complex, commercial disputes. And as stated by the trial court, all cases are important no matter the issues or the amount in controversy: "They're all serious cases. Okay. They're all serious cases."

- aiding and abetting fraud.

Two days later, Fiamma filed a notice of nonsuit, and the petition was dismissed.

On August 21, Fiamma filed an original petition bringing similar claims against the Underwriters, A&J, Henry Global, and PNC. The case was assigned to the 352nd District Court. The Underwriters moved to transfer the case back to the 141st District Court because Fiamma's prior nonsuit and rapid refiling constituted "improper forum- or judge-shopping" given the "liberal rules regarding amendments to pleadings." The 352nd District Court granted the motion and transferred the case to the 141st District Court. Against the Underwriters, Fiamma raised claims for

- aiding and abetting Centurion American's breach of fiduciary duty and

- aiding and abetting Centurion American's fraud.

The Underwriters answered and raised the affirmative defense of legal justification.[3] *See Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 863 (Tex. App.—Houston [14th Dist.] 2001, pets. denied) (op. on reh'g).

Jefferies and Challis each filed a motion to dismiss Fiamma's claims because they had no basis in law or fact.[4] *See* Tex. R. Civ. P. 91a.1. The motions were set for a

---

[3]The Underwriters did not amend their answer in light of Fiamma's later amended petitions.

[4]A&J also moved to dismiss Fiamma's claim.

6

December 14 hearing. On November 13, Fiamma filed a first amended petition against the same defendants. Against the Underwriters, Fiamma alleged

- fraud arising from its role in the TIF sale;

- aiding and abetting the "fraudulent scheme" to misuse the federally backed loan proceeds and to sell the TIF funds; and

- conspiracy.

On November 28—sixteen days before the dismissal hearing—Fiamma filed a second amended petition, adding as defendants most of the Centurion Parties[5] and the Developer. Fiamma raised claims against the Underwriters for

- fraud;

- aiding and abetting the "fraudulent scheme" surrounding the Project and its funding;

- aiding and abetting Centurion American's, 1914 Commerce GM's, and Moayedi's breach of the management contract with Fiamma Management; and

- conspiracy.

Rather than amending their dismissal motions, the Underwriters withdrew them on December 11 "in light of [Fiamma's] Second Amended Petition." *See* Tex. R. Civ. P. 91a.5(b).

---

[5]Fiamma did not name TriArc as a defendant.

Six hours later, Fiamma filed a third amended petition against the same defendants and added the remaining Centurion Parties. Against the Underwriters, Fiamma alleged:

- fraud by material misrepresentations in the Offer and by failing to disclose the TIF sale to Fiamma;

- aiding and abetting fraud regarding the Project and, specifically, regarding the TIF sale;

- aiding and abetting 1914 Commerce Development's, Moayedi's, the Developer's, and Centurion American's breaches of fiduciary duty; and

- conspiracy.

### 2. Motion for Sanctions Based on Pleadings Abuse

The Underwriters then filed a motion for sanctions against Fiamma based on pleadings abuse, raising some of the same arguments included in their prior motions to dismiss:

> [Fiamma] and [its] attorneys have abused the judicial process by filing multiple frivolous, groundless, and false pleadings against [the Underwriters] in bad faith and without reasonable inquiry of facts or applicable law as the next step in their long campaign to coerce a buy-out at a steep profit of their involvement in [the Project]. . . . [Fiamma's] baseless claims against [the Underwriters] rest on conclusory allegations devoid of evidentiary support, are belied by publicly available documents, and are unviable under Texas law.

*See* Tex. Civ. Prac. & Rem. Code Ann. § 10.004(a), (c); Tex. R. Civ. P. 13.

On January 23, 2018, the trial court stayed the case "until the date of the oral hearing on the [sanctions] Motion," which was later set for March 23, 2018. Fiamma then nonsuited its claims against PNC and A&J. Three days before the hearing, Fiamma

8

responded to the Underwriters' sanctions motion and argued that the motion was based on no legal or evidentiary support and was premature because no appreciable discovery had been conducted.

At the nonevidentiary hearing, the trial court ordered Fiamma to file a proposed jury charge to clarify what claims it was alleging against which defendant. The Underwriters explained the reason why they chose to file a sanctions motion instead of a second motion to dismiss under Rule 91a:

> [W]e did make similar arguments in a Rule 91(a) motion, and [Fiamma] amended [its] petition two days later to address some of the challenges that we raised, which to me is not the way that Rule 91(a) is supposed to work. We confirmed that and eventually withdrew our Rule 91(a) motion.
>
> Now, that very same day that we withdrew it, six hours later, [Fiamma] again amended their petition and re[-]added the challenge[d] cause of action [i.e., aiding and abetting breach of fiduciary duty].
>
> . . . .
>
> . . . And yes, we did challenge it via Rule 91(a), and we're bringing the sanction motion under this rule, because Rule 91(a) doesn't allow us to deal with this type of gamesmanship.

The trial court then stated that the Underwriters should file another motion to dismiss and that although Fiamma could continue to remove and re-add claims by amendment, "at some point in time, if that becomes a pattern where [Fiamma is] doing that, I think it becomes frivolous." The trial court declined to rule on the motion at the hearing and left the stay in place until the sanctions motion was determined.

Fiamma's proposed jury charge, which Fiamma filed four days later, laid out the definitions, instructions, and questions applicable to three claims against the Underwriters:

- fraud;

- "assisting or encouraging" and "assisting and participating" in Centurion American's, TriArc's, 1914 Commerce Leasing's, 1914 Commerce GM's, Moayedi's, and the Developer's fraud; and

- "assisting or encouraging" and "assisting and participating" in Centurion American's, 1914 Commerce Leasing's, 1914 Commerce GM's, Moayedi's, and the Developer's breaches of fiduciary duty.

The Underwriters objected to the proposed jury charge, arguing that the instructions provided further evidence of Fiamma's "repeated violations and gamesmanship," included claims not raised in Fiamma's third amended petition, and included claims not recognized in Texas.

### 3. "Renewed" Motion to Dismiss

One month after the trial court's sanctions hearing, the Underwriters filed a "[r]enewed" motion to dismiss Fiamma's claims under Rule 91a. They pointed to Fiamma's "improper conduct" and challenged the legal and factual bases for each of Fiamma's claims against them. Further, they argued that Fiamma had abandoned its conspiracy claim because it was not included in its proposed jury charge. The Underwriters attached several exhibits to their motion, including the Offer the Underwriters had prepared in 2016. Fiamma responded that the Underwriters were attempting to seek a no-evidence summary judgment before discovery had been

10

conducted. It also argued that its aiding-and-abetting claims were cognizable under Texas law, that these claims were properly pleaded through a "wealth of detailed factual allegations," and that it had not abandoned its conspiracy claim. The motion was set for a June 1 hearing.

Although the hearing was held, the stenographic recording was lost or destroyed. No party argues that the record from this hearing is "necessary to the appeal's resolution"; thus, we do not further address this discrepancy. Tex. R. App. P. 34.6(f)(3).

On June 15, the trial court granted the Underwriters' renewed motion to dismiss and dismissed Fiamma's claims for "aiding and abetting breach of fiduciary duty, aiding and abetting fraud, conspiracy, and fraud" against the Underwriters. Because the Underwriters, therefore, were entitled to a mandatory award of all costs and reasonable and necessary attorney's fees, the trial court ordered the Underwriters to submit evidence regarding their costs and fees no later than July 3. *See* Tex. R. Civ. P. 91a.7, 76 Tex. B.J. 221, 222 (2013) (Tex. Sup. Ct. 2013, amended 2019) (requiring costs and attorney's-fees award for prevailing party).[6]

---

[6]The current version of Rule 91a.7 provides that costs and attorney's fees "may" be awarded to the prevailing party. Tex. R. Civ. P. 91a.7. This amendment, however, applies only to "civil actions commenced on or after September 1, 2019." Tex. R. Civ. P. 91a 2019 cmt. We will thus apply and cite to the 2013 version of Rule 91a.7 in our discussion of this issue.

### 4. Motion to Reconsider

On June 28, Fiamma filed a motion to reconsider the dismissal and argued that the renewed motion to dismiss was untimely because it had been filed more than sixty days after the third amended petition and that the order was untimely because it was not granted or denied within forty-five days after the Underwriters filed their motion to dismiss. *See* Tex. R. Civ. P. 91a.3(a), (c). The next day, the trial court lifted the stay "for all parties." The trial court then extended the Underwriters' deadline to submit evidence to the trial court of their costs and fees until three business days after the reconsideration motion was determined. The trial court heard and denied Fiamma's motion on July 13, making the Underwriters' costs and fees evidence due July 18.

### 5. Costs and Attorney's Fees

On July 18, the Underwriters submitted their attorneys' unredacted, contemporaneous billing records to the court in camera accompanied by an affidavit from their lead counsel, Katherine Treistman, in which she averred that the hourly rates charged and the fees shown in the billing records were "reasonable and necessary for a case of this magnitude and complexity" and were "incurred with respect to the challenged causes of action from the matter's inception on July 31, 2017, through July 13, 2018."[7] She and two other attorneys (Harry J. Moren and Toni K. Lambert)

---

[7]The unredacted billing records were provided to the court in camera on July 17; Treistman's affidavit and supporting memorandum were not filed with the court until the next day.

had worked on the case for an hourly rate that ranged from $408 to $850. The curricula vitae of Treistman, Moren, and Lambert were also attached to Treistman's affidavit. Treistman stated that the Underwriters were requesting $668,447 in reasonable and necessary attorney's fees.

The Underwriters provided Fiamma a copy of the redacted billing records on July 19. Treistman averred that redacted records were necessary to protect information subject to the attorney–client and work-product privileges. The redactions generally were placed to conceal the subject matter of a billed task. A few examples:

> (1) "T. Lambert[:] Compared original petition to amended petition to [redacted]";
>
> (2) "K. Treistman[:] Confer by phone twice with [Fiamma's counsel] and team; confer by email with co-defendants re [redacted]; strategize re motion for sanctions";
>
> (3) "T Lambert[:] Review and revise motion to dismiss draft to include client edits; beef up [redacted]; reorganize and rewrite [redacted]; add [redacted]; smaller edits"; and
>
> (4) H. Moren[:] Prepare for hearing on motion to dismiss, confer with K. Treistman re [redacted], email M. Challis re [redacted]."

Many entries were not redacted, however, and identified the legal professional performing the task and the type of task that was billed. For example:

> (1) "H. Moren[:] Meet and confer with plaintiffs' counsel S. Klein re motion to transfer court; confer with K. Treistman re same";
>
> (2) "T. Lambert[:] Prepare and edit special exceptions to Plaintiffs' amended complaint";
>
> (3) "K. Treistman[:] Review and revise motion to dismiss; write introduction to same"; and

(4) "H. Moren[:] Draft response to reconsideration motion."

Fiamma filed a motion to compel production of the unredacted billing records to allow it to respond to the Underwriters' evidence of their costs and attorney's fees. The trial court held an evidentiary hearing on this motion on August 10. At the hearing, Fiamma argued that it could not effectively dispute the Underwriters' requested attorney's fees because the Underwriters had provided only redacted billing records; Fiamma offered as an exhibit, "for purposes of the hearing," the redacted billing records that the Underwriters had provided. The trial court stated that it would not consider the unredacted billing records, declining to compel their production, and admitted the redacted billing records as an exhibit over no objection by either Fiamma or the Underwriters. Once Fiamma knew that the trial court would consider only the redacted billing records, it requested "a reasonable time" to respond to the Underwriters' requested attorney's fees, which the trial court granted until September 28.

Fiamma responded on September 19 and argued that the Underwriters' evidence was legally insufficient to support the requested costs and attorney's fees. Regarding the attorney's fees, Fiamma specifically attacked the evidentiary value of Treistman's affidavit and asserted that the billing records, even if considered, failed to segregate the fees that were recoverable with respect to the challenged causes of action. Fiamma attached the affidavit of its lead counsel, Gregory N. Ziegler, in which he asserted that several deficiencies in Treistman's affidavit showed that the requested attorney's fees

were not reasonable or necessary. Ziegler countered Treistman's rate testimony and averred that he was charging Fiamma $350 per hour and that "other shareholders and associates on this type of case" charge anywhere from $175 to $250 per hour.

Treistman also averred in her affidavit that the Underwriters had incurred $12,410 in costs, which were included in the billing records. Fiamma argued that not only was Treistman's affidavit impermissibly conclusory on this issue, many of the Underwriters' requested costs were not identified as being recoverable under a specific rule or statute and, thus, could not be awarded.

On October 10, the trial judge of the 141st District Court recused himself, apparently at Fiamma's request, and the case was transferred to the 342nd District Court of Tarrant County.[8] The Underwriters then replied to Fiamma's attacks on the sufficiency of their evidence to establish their costs and fees. They attached to their reply the affidavit of Robert M. Hoffman, who stated that he was lead counsel for one of the Underwriters' co-defendants—PNC—and that he was charging a discounted

---

[8]Shortly after the recusal and transfer, Fiamma filed its seventh amended petition against the same defendants as those named in the third amended petition plus three newly named defendants. Our record does not contain the fourth, fifth, or sixth amended petitions. Fiamma and PNC, which was revived as a defendant after Fiamma's earlier nonsuit, are currently litigating whether Fiamma's claims against PNC are subject to dismissal under the Texas Citizens Participation Act. *See PNC Inv. Co. v. Fiamma Statler, LP*, No. 02-19-00037-CV, 2020 WL 5241190, at *1, *7 (Tex. App.—Fort Worth Sept. 3, 2020, no pet. h.) (mem. op.).

15

hourly rate of $722.50. Fiamma objected to Hoffman's affidavit as being conclusory and lacking foundation.

The 342nd District Court then took up the issue of the Underwriters' costs and attorney's fees under Rule 91a.7 at a January 17, 2019 hearing. Fiamma again argued that the billing records were incomplete and not timely provided to the court or to Fiamma and attacked the sufficiency of Treistman's and Hoffman's affidavits. Fiamma also argued that any costs and fees regarding anything other than the Underwriters' ultimately successful renewed motion to dismiss, such as their sanctions motion, could not be included in the awarded amount. Finally, Fiamma asserted that not all of the costs requested by the Underwriters were recoverable, even under Rule 91a.7, because they were not authorized as recoverable court costs. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.007. On January 31, the trial court awarded the Underwriters $36,750 "in attorney's fees" and $408 "in court costs." The trial court did not rule on Fiamma's objections to Treistman's and Hoffman's affidavits or on Fiamma's challenges to the sufficiency of the Underwriters' evidence of fees and costs.

### 6. Severance and Appeal

The Underwriters moved to sever Fiamma's claims brought against them from Fiamma's claims brought against the remaining defendants, which the trial court granted. Fiamma then filed a notice of appeal regarding the order granting the Underwriters' renewed motion to dismiss, the denial of its motion to reconsider the dismissal, and the costs and fees award. On appeal, Fiamma argues that dismissal was

16

inappropriate because the Underwriters' motion was untimely and because Fiamma's claims were sufficiently based in law and fact. Fiamma also asserts that the Underwriters were not entitled to costs or attorney's fees because they should not have been a prevailing party or because the Underwriters' proof was insufficient. The Underwriters also filed a notice of appeal from the trial court's costs and attorney's-fees award because they had allegedly proved that they were entitled to a significantly larger award. *See* Tex. R. App. P. 25.1(c).

## II. DISMISSAL UNDER RULE 91A

### A. PROCEDURAL REQUIREMENTS

As a procedural device, Rule 91a is "unique, an animal unlike any other in its particulars." *Wooley v. Schaffer*, 447 S.W.3d 71, 84 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (Frost, C.J., concurring). And although Rule 91a is "an effective tool to quickly ferret out groundless causes of action," a movant is guided by the rule's procedural requirements in seeking a dismissal early in the life of a case. Emma Cano & Lamont A. Jefferson, *Rule 91A: Early Disposition Tool or the Mean Green Mother from Outer Space?*, 87 The Advoc. (Tex.) 1, 1 (2019).

The movant must refer to Rule 91a in the motion; must identify the claim to which it is addressed; and must specify the reasons why the claim has no basis in law, fact, or both. Tex. R. Civ. P. 91a.2. The motion must be filed no later than sixty days after the claim is served on the movant, and the trial court must rule on the motion no later than forty-five days after the motion was filed. Tex. R. Civ. P. 91a.3.

17

Fiamma filed and served its third amended petition on December 11, 2017. Forty-three days later, the trial court stayed the case. The Underwriters filed their renewed motion on April 23, 2018. The trial court granted the motion on June 15 and lifted the stay on June 29. In its first issue, Fiamma argues that the trial court erred by dismissing its claims against the Underwriters because either (1) the Underwriters failed to move for dismissal within sixty days after Fiamma served the third amended petition or (2) the trial court failed to rule on the motion within forty-five days after the motion was filed. But even if both were untimely, we conclude that Fiamma cannot show harm arising from either alleged error.

Although the procedural deadlines in Rule 91a are phrased in terms of "must," these provisions are directory and not mandatory. Tex. R. Civ. P. 91a.3; *see MedFin Manager, LLC v. Stone*, No. 04-19-00662-CV, 2020 WL 5027201, at *3 (Tex. App.—San Antonio Aug. 26, 2020, no pet. h.); *Smale v. Williams*, 590 S.W.3d 633, 636 (Tex. App.—Texarkana 2019, no pet.); *Koenig v. Blaylock*, 497 S.W.3d 595, 598–99 (Tex. App.—Austin 2016, pet. denied) (citing *Chisholm v. Bewley Mills*, 287 S.W.2d 943, 945 (Tex. 1956)). Thus, any noncompliance with the timing of the renewed motion or the trial court's ruling will not result in reversal if such error is harmless. *See* Tex. R. App. P. 44.1(a); *Aguilar v. Morales*, 545 S.W.3d 670, 682 (Tex. App.—El Paso 2017, pet. denied); *Walker v. Owens*, 492 S.W.3d 787, 790–91 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also Malone v. Malone*, No. 06-10-00083-CV, 2011 WL 908176, at *5 (Tex. App.—Texarkana Jan. 7, 2011, no pet.) (mem. op.) ("The harmless error rule applies to all

errors, even those involving the violation of procedural rules couched in mandatory language.").

Fiamma asserts that it was harmed by the delays because they allowed the Underwriters to amass more attorney's fees. But Rule 91a, including its directory deadlines, was intended to benefit a movant seeking early dismissal of a baseless claim before costly litigation ensues. *Walker*, 492 S.W.3d at 790 n.3. Additional time would not prejudice a nonmovant because the delay would give the nonmovant "more time to formulate a response to a dismissal argument, more time to amend a petition to add facts or adjust legal theories, and more time to consider whether to non-suit [its] case." *Koenig*, 497 S.W.3d at 599; *see also Smale*, 590 S.W.3d at 636–37. And the trial court's stay during its consideration of the sanctions and dismissal motions belies Fiamma's argument that the delays necessarily caused the Underwriters' attorney's fees to increase.[9] *See Marshall v. Enter. Bank*, No. 10-16-00379-CV, 2018 WL 4224078, at *3 (Tex. App.—Waco Sept. 5, 2018, pet. denied) (mem. op.). We cannot conclude that either of these complained-of delays probably caused the rendition of an improper judgment or probably prevented Fiamma from properly presenting its case to this court. *See* Tex. R. App. P. 44.1(a). Thus, we overrule Fiamma's first issue and turn to the merits of the Underwriters' motion to dismiss under Rule 91a.

---

[9]Further, we note that Fiamma's own delay in failing to raise the alleged deadline violations until its motion to reconsider could be seen as a cause of some of the Underwriters' increased attorney's fees.

19

## B.  STANDARD AND SCOPE OF REVIEW

Rule 91a allows a party to move to dismiss a claim brought against it if the claim has "no basis in law or fact." Tex. R. Civ. P. 91a.1. If a claimant's factual allegations, taken as true, and the reasonable inferences to be drawn from those allegations do not entitle the claimant to the relief sought, the claim has no basis in law. Tex. R. Civ. P. 91a.1. Legal conclusions alleged by the pleader should not be taken as true however. *See City of Austin v. Liberty Mut. Ins. Co.*, 431 S.W.3d 817, 826 (Tex. App.—Austin 2014, no pet.). Two examples of the meaning of "no basis in law":

> 1. The petition alleges too few facts to show a viable, legally cognizable right to relief. In other words, inadequate content may justify dismissal because it does not provide fair notice of a legally cognizable claim for relief.

> 2. The petition alleges additional facts that, if true, bar recovery.

*See Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 608 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.); *Stallworth v. Ayers*, 510 S.W.3d 187, 190 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Guillory v. Seaton, LLC*, 470 S.W.3d 237, 240 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *DeVoll v. Demonbreun*, No. 04-14-00116-CV, 2014 WL 7440314, at *3 (Tex. App.—San Antonio Dec. 31, 2014, no pet.). A claim has no basis in fact if "no reasonable person could believe the facts pleaded," which is similar to a legal-sufficiency review. Tex. R. Civ. P. 91a.1; *City of Dall. v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam); *see Drake v. Chase Bank*, No. 02-13-00340-CV, 2014 WL 6493411, at *2 (Tex. App.—Fort Worth Nov. 20, 2014, no pet.) (mem. op.).

20

In determining a Rule 91a motion, the trial court's factual inquiry is limited to "the pleading of the cause of action" and any pleading exhibits permitted by Rule 59, which are those attached to or copied into the plaintiff's pleadings. Tex. R. Civ. P. 91a.6, 59; *see Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020). But the trial court's legal inquiry is not as limited. *See Bethel*, 595 S.W.3d at 656. In its legal inquiry, a trial court may additionally consider the substance of the motion to dismiss and any arguments presented at the hearing.[10] *See id.* at 655.

We review the trial court's ruling de novo because whether a claim has a basis in law or a basis in fact are questions of law. *See id.* at 654; *Sanchez*, 494 S.W.3d at 724; *Bedford Internet Office Space, LLC v. Tex. Ins. Grp., Inc.*, 537 S.W.3d 717, 719 (Tex. App.—Fort Worth 2017, pet. dism'd by agr.); *Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 183 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). In doing so, we incorporate the fair-notice pleading standard to determine if the petition allegations are sufficient to allege a legal and factual basis for each cause of action. *Wooley*, 447 S.W.3d at 75–76 (majority op.); *see* Tex. R. Civ. P. 45(b), 47(a); *In re Odebrecht Constr., Inc.*, 548 S.W.3d 739, 746 (Tex. App.—Corpus Christi–Edinburg 2018, orig. proceeding) (op. on reh'g). That means we construe the pleadings liberally in Fiamma's

---

[10]As we recognized previously, there is no reporter's record from the hearing on the Underwriters' renewed motion; thus, we cannot determine if additional arguments were made at the hearing.

favor, accepting as true Fiamma's factual allegations, to determine whether Fiamma

sufficiently alleged a legal and factual basis for each cause of action, thereby giving the

Underwriters fair notice of the nature of the controversy, its basic issues, and the type

of evidence that could be relevant. *See First United Pentecostal Church of Beaumont v. Parker*,

514 S.W.3d 214, 224–25 (Tex. 2017); *Darnell v. Rogers*, 588 S.W.3d 295, 301 (Tex. App.—

El Paso 2019, no pet.) (quoting *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007)); *Thomas

v. 462 Thomas Family Props., LP*, 559 S.W.3d 634, 639–40 (Tex. App.—Dallas 2018, pet.

denied); *Wooley*, 447 S.W.3d at 75–76; Gregory P. Sapire & Mario Franke, *Dismissal

Motions Under Rule 91a*, 91 The Advoc. (Tex.) 318, 334 (2020).

Although Rule 91a does not supersede the fair-notice pleading requirements,[11]

fair notice should be judged in the context of Rule 91a's definitions of no legal or factual

basis. *Resendez v. Scottsdale Ins. Co.*, No. 1-15-CV-1082 RP, 2016 WL 756576, at *2 (W.D.

Tex. Feb. 26, 2016) (order) (interpreting Rule 91a and citing *New Life Assembly of God v.

Church Mut. Ins. Co.*, No. 2:15-CV-00051-J, 2015 WL 2234890, at *4–5 (N.D. Tex. May

12, 2015) (mem. op. & order)); *Reaves*, 518 S.W.3d at 598; *see also* Tex. R. Civ. P. 91a.9

(providing that Rule 91a dismissal is "in addition to, and does not supersede or affect,

---

[11]Indeed, the analysis of the bill that authorized the Supreme Court to enact a dismissal rule for frivolous lawsuits noted that the Supreme Court was not required to adopt the federal standard in Rule 12(b)(6) and that the eventual procedural rule—Rule 91a—"would not change the forms of pleadings in Texas" unless the Supreme Court made any necessary changes to the pleading requirements. House Comm. on Judiciary & Civ. Juris., Bill Analysis, Tex. H.B. 274, 82d Leg., R.S. (2011).

other procedures that authorize dismissal" such as special exceptions under Rules 90 and 91); Sapire & Franke, *supra*, at 334 (recognizing Rule 91a's no-basis-in-fact standard "may offer the only opportunity for an expedited resolution"). To fail to apply Rule 91a's dictates in tandem with the fair-notice standard would read one out of existence, which is a result we cannot approve. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 839 (Tex. 2018) ("[O]ur analysis seeks to harmonize the two statutes at issue in this case, giving effect to both . . . ."); *In re Christus Spohn Hosp. Kelberg*, 222 S.W.3d 434, 437 (Tex. 2007) (orig. proceeding) (providing rules of civil procedure subject to statutory rules of construction). Although several courts have found federal cases applying Rule 12(b)(6) to be persuasive in reviewing a Rule 91a dismissal and have implicitly held the reviews to be the same,[12] we do not go that far in this case. We

---

[12]*See, e.g.*, *Ruth v. Crow*, No. 03-16-00326-CV, 2018 WL 2031902, at *5 (Tex. App.—Austin May 2, 2018, pet. denied) (mem. op. on reh'g); *Salazar v. HEB Grocery Co.*, No. 04-16-00734-CV, 2018 WL 1610942, at *3 (Tex. App.—San Antonio Apr. 4, 2018, pet. denied) (mem. op.), *cert. denied*, 140 S. Ct. 260 (2019); *Aguilar*, 545 S.W.3d at 676; *Weizhong Zheng*, 468 S.W.3d at 186; *Wooley*, 447 S.W.3d at 76; *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied). *But see In re Butt*, 495 S.W.3d 455, 461–62 (Tex. App.—Corpus Christi–Edinburg 2016, orig. proceeding) (recognizing that some courts follow Rule 12(b)(6) analysis in applying Rule 91a, but relying solely on fair notice in reviewing Rule 91a motion). *See generally* Sapire & Franke, *supra*, at 343–44 (recognizing split of authority); Cano & Jefferson, *supra*, at 4–5 (discussing relation between Rules 91a and 12(b)(6) and stating "Texas courts are regularly referring to Rule 12(b)(6) jurisprudence in deciding the sufficiency of pleadings under Rule 91a"); Kennon L. Wooten & Anthony Arguijo, *Rule 91a Dismissal Procedures: Basic Considerations and Unanswered Questions*, 80 The Advoc. (Tex.) 60, 60–61 (2017) (recognizing uncertainty of Rule 91a's effect on fair-notice standard).

merely read the fair-notice precepts along with Rule 91a's requirements of a pleaded legal and factual basis for each claim, as those terms are defined in Rule 91a.1.

### C. FIAMMA'S CLAIMS AND THEIR BASES

### 1. Fraud

In subpart A of its third issue, Fiamma argues that it adequately pleaded its fraud claim such that the Underwriters were given fair notice of the claim's legal and factual bases. To allege a legal and factual basis for its fraud claim against the Underwriters, Fiamma was required to give fair notice that

1. the Underwriters made a material representation that was false;

2. the Underwriters knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;

3. the Underwriters intended to induce Fiamma to act upon the representation; and

4. Fiamma actually and justifiably relied upon the representation and suffered injury as a result.

*See JP Morgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 653 (Tex. 2018); *Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 261 (Tex. App.—Fort Worth 2018, no pet.); *see also Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App.—Fort Worth 1997, pet. denied) (holding plaintiff's reasonable reliance on deception is element of fraudulent concealment).

Fiamma alleged that the Underwriters' Offer contained at least six "material misrepresentations of fact about the Project" that were either "expressly false or

24

misleadingly concealed." Fiamma asserted that the Underwriters misrepresented to Fiamma, "either directly or indirectly," that the Offer statements were true; but Fiamma also alleged that the Underwriters concealed the TIF sale from Fiamma and did not contact Fiamma during the "due diligence process" before issuing the Offer, leading Fiamma to take "no action to stop" the TIF sale. Had it been informed of the TIF sale, Fiamma contended that it could have corrected the alleged misrepresentations in the Offer, and the bonds would not have been issued based on the alleged false information. The misrepresentations allegedly damaged Fiamma "by devaluing [Fiamma's] ownership interests" in the Project.

None of these allegations, even taken as true, show that the Underwriters prepared the Offer with the intent that Fiamma rely on the representations to Fiamma's detriment. *See, e.g.*, *DeVoll*, 2014 WL 7440314, at *2–3. Nor do the allegations give fair notice that the Underwriters made any misrepresentations directly to Fiamma or indirectly to a third party that were subsequently relied on by Fiamma. *See, e.g.*, *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011). The Offer admittedly was directed to Wisconsin, not Fiamma. *See Scott v. Comm'l Servs. of Perry, Inc.*, 121 S.W.3d 26, 30 (Tex. App.—Tyler 2003, pet. denied). The misrepresentations or failures to disclose alleged in Fiamma's petition concerned a matter about which Fiamma had personal knowledge as an interested owner of the Project. *See Darnell v. Rogers*, 588 S.W.3d 295, 305 (Tex. App.—El Paso 2019, no pet.). No reasonable person could believe that Fiamma would rely on the Offer, even if false, to its detriment based on

25

Fiamma's actual knowledge. Indeed, Fiamma negated any possibility of justifiable reliance by alleging that it would have corrected the misrepresentations and stopped the sale if it had reviewed the Offer before the sale. And no such reliance would have been justifiable, as a matter of law. *See, e.g.*, *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923–24 (Tex. 2010).

We conclude that Fiamma's fraud claim as pleaded had no basis in law or fact, failing to give fair notice (as the Underwriters argued in their renewed motion to dismiss); thus, the trial court did not err by granting the Underwriters' motion as to this claim. *See DeVoll*, 2014 WL 7440314, at *3. We overrule issue 3.A.

## 2. Aiding and Abetting

In subpart B of its third issue, Fiamma argues that it adequately pleaded claims against the Underwriters for aiding and abetting fraud and for aiding and abetting breach of fiduciary duty. Under the aiding-and-abetting umbrella, there are three theories of liability, two of which were alleged by Fiamma against the Underwriters: (1) assisting or encouraging a tort and (2) assisting and participating in a tort. *See O'Connor's Texas Causes of Action* 1263–64 (2019); Thomas C. Riney, *Participatory & Vicarious Liability in Business Litigation*, 37 Corp. Couns. Rev. 31, 38 (2018); *see also Collins v. Kappa Sigma Fraternity*, No. 02-14-00294-CV, 2017 WL 218286, at *15 (Tex. App.—Fort Worth Jan. 19, 2017, pet. denied) (mem. op.); Restatement (Second) of Torts § 876(b)–(c) (Am. Law Inst. 1979). In its allegations of aiding and abetting fraud, Fiamma contended that the Underwriters assisted and participated in the alleged

26

fraudulent scheme involving the Project. Regarding aiding and abetting breach of fiduciary duty, Fiamma alleged that the Underwriters assisted, encouraged, and participated in the breach.

Texas has not clearly recognized that assisting or encouraging a primary actor's tort is a recognized cause of action independent of a civil conspiracy claim. *See First United*, 514 S.W.3d at 225; *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996); *see also In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 781–82 (5th Cir. 2018); *AmWins Specialty Auto, Inc. v. Cabral*, 582 S.W.3d 602, 610–11 (Tex. App.—Eastland 2019, no pet.). *See generally O'Connor's Texas Causes of Action* 1264 (recognizing Texas Supreme Court has not adopted Restatement's recognition of assisting-or-encouraging liability in Restatement Section 876(b) but noting "it is likely" the Court will do so). However, Texas arguably has recognized assisting and participating in a tort as a theory for imposing joint, derivative liability. *See City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex. 1969); *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942); *see also Milligan v. Salamone*, No. 1:18-CV-327-RP, 2019 WL 4003093, at *1–2 (W.D. Tex. Aug. 23, 2019) (order on reh'g); *Clayton v. Richards*, 47 S.W.3d 149, 154 (Tex. App.—Texarkana 2001, pet. denied); *O'Connor's Texas Causes of Action* 1271; Restatement (Second) of Torts § 876(c). *But see Mark III Sys., Inc. v. Sysco Corp.*, No. 01-05-00488-CV, 2007 WL 529960, at *8 (Tex. App.—Houston [1st Dist.] Feb. 22, 2007, no pet.) (mem. op.) ("Because 'participating and assisting' is not a recognized cause of action in the context of misappropriation of trade secrets and fraud, the trial court did not err in granting

summary judgment on those claims."); Nelson S. Ebaugh, *The Liability*, 78 Tex. B.J. 362, 365 (2015) (recognizing questionable viability of claim for participating and assisting in a tort under Section 876(c) of Restatement).

But even assuming both liability theories are cognizable independent of Fiamma's conspiracy claim, we conclude that neither, as alleged, has a basis in law or fact and we overrule issue 3.B.[13] *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001); *Juhl*, 936 S.W.2d at 644.

## a. Aiding and abetting fraud

The Underwriters argue that Fiamma did not raise a claim for aiding and abetting fraud against them in the third amended petition. But Fiamma specified in a bolded heading that it was raising a claim for aiding and abetting fraud. Fiamma then alleged under that heading that some of the defendants assisted others in a fraudulent scheme regarding the Project's funding:

> Each of the Big Three[14] and Challis, individually, committed the fraudulent acts identified herein. In addition, each of the Non-Fiduciary Centurion Defendants[15] assisted in and encouraged the fraudulent acts.

---

[13]Because we assume these liability theories are cognizable for purposes of this case, we need not address Fiamma's alternative second issue urging this court to definitively decide the existence of such claims. *See* Tex. R. App. P. 47.1.

[14]Fiamma defined the "Big Three" as PNC, A&J, Henry Global, and Jefferies.

[15]Fiamma did not specifically define "Non-Fiduciary Centurion Defendants"; but it did define "Fiduciary Defendants" as 1914 Commerce GM, Moayedi, the Developer, and Centurion American. Reading this definition together with Fiamma's

28

> Each of [sic] had knowledge of the fraudulent scheme . . . . Each assisted in completing these fraudulent transactions and activities, with the intent and understanding that the activities were fraudulent, or with reckless disregard.

While Fiamma's "each" language is imprecise and its attempt to group the defendants into various named-party groups is confusing, we conclude that Fiamma fairly included the Underwriters as parties to Fiamma's allegation that "[e]ach assisted in completing these fraudulent transactions and activities"; thus, Fiamma sufficiently named the Underwriters as parties to its aiding-and-abetting-fraud claim. *See* Tex. R. Civ. P. 45(b), 47(a); Restatement (Second) of Torts § 876(c) & cmt. e (defining and explaining assisted-and-participated theory of aiding-and-abetting liability).

Even so, aiding and abetting, no matter the pleaded theory of liability, is a dependent claim that is premised on an underlying tort. *See Ernst & Young*, 51 S.W.3d at 583; *see also Nettles v. GTECH Corp.*, Nos. 17-1010, 18-0159, 2020 WL 5754456, at *9 (Tex. June 12, 2020) (recognizing aiding and abetting is "derivative" liability theory). We have already determined that the trial court did not err by dismissing Fiamma's fraud claim based on the lack of fair notice of a legal or factual basis for such a claim against the Underwriters; thus, Fiamma's claim for aiding and abetting that same fraud was also subject to dismissal based on the Underwriters' renewed motion. *See Nettles*, 2020 WL 5754456, at *9 (holding aiding and abetting, as a "liability-spreading theor[y],"

---

definition of "Centurion Defendants," we conclude that the Non-Fiduciary Centurion Defendants were TriArc, 1914 Commerce Leasing, and Statler Developers.

depends on "liability for an underlying tort" and would "survive or fail alongside that tort").

### b. Aiding and abetting breach of fiduciary duty

Regarding aiding and abetting breach of fiduciary duty, Fiamma alleged two theories of liability: assisting or encouraging as well as assisting and participating. Fiamma alleged that the Underwriters knew the Fiduciary Defendants—1914 Commerce GM, Moayedi, the Developer, and Centurion American—owed Fiamma a fiduciary duty and that the Underwriters played a part in the Fiduciary Defendants' breaches. Fiamma summarized the alleged breaches to have been "the ongoing irregularities in the construction contracting, operation, financing, and budgeting of the . . . Project, including unauthorized and unsupported budget increases, transfers of valuable project assets, wrongful termination of [Fiamma Management's] management role on the . . . Project, and other violations of the [Fiduciary[16]] Defend [sic] fiduciary duties to [Fiamma] as minority owner[]."

---

[16]Fiamma alleged in this portion of its third amended petition that the "Centurion Defend [sic]" violated their fiduciary duties to Fiamma. Because Fiamma's definition of the Centurion Defendants included parties that Fiamma also identified as Non-Fiduciary Defendants, who necessarily would not owe a fiduciary duty to Fiamma, we have assumed that Fiamma meant the "Fiduciary Defendants" in its summary statement of this claim. But if Fiamma meant to include the Non-Fiduciary Defendants in this allegation, such a claim would have no basis in fact or law based on the absence of an owed fiduciary duty to Fiamma. *See Kline v. O'Quinn*, 874 S.W.2d 776, 786–87 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

### (1). assisting or encouraging

To show the Underwriters' derivative breach-of-fiduciary-duty liability based on their assistance or encouragement (if such a claim is cognizable), Fiamma had to give fair notice that (1) the Fiduciary Defendants committed a breach of fiduciary duty; (2) the Underwriters had knowledge that the Fiduciary Defendants' conduct constituted a breach of fiduciary duty; (3) the Underwriters had the intent to assist the Fiduciary Defendants in committing the tort; (4) the Underwriters gave the Fiduciary Defendants assistance or encouragement; and (5) the Underwriters' assistance or encouragement was a substantial factor in causing the breach of fiduciary duty. *See Juhl*, 936 S.W.2d at 644; *Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 882 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* Restatement (Second) of Torts § 876(b) & cmt. d.

Fiamma alleged in a conclusory manner that the Underwriters "knew" or had "full knowledge" that the Fiduciary Defendants breached their duty to Fiamma. As argued by the Underwriters in their motion to dismiss, Fiamma failed to allege any facts in its third amended petition supporting this bare "knowledge" allegation. *See First United*, 514 S.W.3d at 224–25; *Salazar*, 2018 WL 1610942, at *3–5. Unadorned recitals of the elements of a cause of action, supported by mere conclusory statements, fail to sufficiently allege a cause of action under the fair-notice and Rule 91a standards. *GoDaddy.com*, 429 S.W.3d at 754; *see Weizhong Zheng*, 468 S.W.3d at 186. In other words, Fiamma's basic recitation that the Underwriters had knowledge of the Fiduciary

31

Defendants' breach is nothing more than a conclusory restatement of the legal elements of the claim itself with no supporting factual allegation. *See generally Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982) ("A petition is sufficient if it gives fair and adequate notice of the *facts* upon which the pleader bases his claim." (emphasis added)). Thus, this aiding-and-abetting liability theory was appropriately dismissed under Rule 91a because it had no basis in fact or law, failing to give fair notice to the Underwriters. *See Darnell*, 588 S.W.3d at 305; *Beddingfield v. Beddingfield*, No. 10-15-00344-CV, 2018 WL 6378553, at *13 (Tex. App.—Waco Dec. 5, 2018, pet. denied) (mem. op.); *Salazar*, 2018 WL 1610942, at *3–5; *Dailey v. Thorpe*, 445 S.W.3d 785, 787–89 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

### (2). assisting and participating

To show the Underwriters' derivative liability for assisting and participating in the Fiduciary Defendants' alleged breach of fiduciary duty, Fiamma had to sufficiently allege that (1) the Fiduciary Defendants' activity was a breach of fiduciary duty; (2) the Underwriters provided substantial assistance to the Fiduciary Defendants in accomplishing the tortious result; (3) the Underwriters' own conduct, separate from the Fiduciary Defendants', was a breach of duty to Fiamma; and (4) the Underwriters' participation was a substantial factor in causing the breach of fiduciary duty. *See Premier Rsch. Labs, LP v. Nurman*, No. A-13-CA-069-SS, 2014 WL 978477, at *3 (W.D. Tex. Mar. 12, 2014) (order); *O'Connor's Texas Causes of Action* 1271; *see also* Restatement (Second) of Torts § 876(c) & cmt. e.

32

As the Underwriters asserted in their renewed motion to dismiss, Fiamma alleged no facts showing that the Underwriters' actions surrounding the Offer were a substantial causative factor—a cause in fact—in the Fiduciary Defendants' breaches. To give fair notice of cause in fact, Fiamma was required to include factual allegations that allowed a reasonable inference that the Underwriters' actions were a substantial factor in bringing about the Fiduciary Defendants' breaches. *See Aguilar*, 545 S.W.3d at 680 (citing *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)); Restatement (Second) of Torts § 876(b) cmt. d ("In determining liability, the factors are the same as those used in determining the existence of legal causation when there has been negligence . . . or recklessness."). Fiamma alleged that the Underwriters' role in the alleged "scheme" was brokering and underwriting the TIF sale in the Offer. Fiamma also alleged that the Underwriters did not contact Fiamma about the Offer or the TIF sale, preventing Fiamma from either stopping the sale or correcting the misrepresentations. Fiamma does not allege even in a cursory manner how the Offer was a substantial factor in the Fiduciary Defendants' breaches of their fiduciary duty to Fiamma regarding the Project. *See Darnell*, 588 S.W.3d at 305; *Dailey*, 445 S.W.3d at 788–89. Indeed, Fiamma's allegations are nothing more than assertions that the Underwriters, at most, created the condition that made a harm possible and are, thus, insufficient factual allegations supporting this claim as a matter of law. *See Moore Freight Servs., Inc. v. Munoz*, 545 S.W.3d 85, 99 (Tex. App.—El Paso 2017, pets. denied); *Immobiliere Jeuness*, 525 S.W.3d at 882. Nor does Fiamma allege that the Fiduciary

33

Defendants' use of the Underwriters to communicate the Offer was anything more than slight assistance. *See* Restatement (Second) of Torts § 876 cmt. d, illus. 9 & cmt. e, ¶ 2. We conclude that Fiamma's claim that the Underwriters participated in and assisted the Fiduciary Defendants' breach of fiduciary duty has no basis in fact or law as pleaded and failed to give fair notice. *See First United*, 514 S.W.3d at 224–25. Thus, the trial court did not err by dismissing this claim. *See Darnell*, 588 S.W.3d at 305; *Dailey*, 445 S.W.3d at 788–89.

### 3. Conspiracy

In issue 3.C., Fiamma contends that it adequately pleaded a civil conspiracy claim against the Underwriters. If the underlying claim fails because the plaintiff cannot prove one of the underlying claim's elements, a derivative civil conspiracy claim also fails. *See Nettles*, 2020 WL 5754456, at *9–10; *Grant Thornton*, 314 S.W.3d at 930–31; *Ernst & Young*, 51 S.W.3d at 583; *see also Agar Corp. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) (holding civil conspiracy is not an independent tort). Here, Fiamma's conspiracy theory against the Underwriters is wholly derivative of the underlying alleged fraud and breach of fiduciary duty. *See, e.g.*, *Nettles*, 2020 WL 5754456, at *9–10. Because we have concluded that Fiamma failed to sufficiently allege a legal or factual basis for its fraud claim and for its aiding-and-abetting liability theories against the Underwriters, Fiamma's conspiracy claim was likewise subject to dismissal.[17] *See Baty*,

---

[17]Even if the conspiracy claim were not dragged down in the undertow of Fiamma's other claims against the Underwriters, we would agree with the Underwriters

63 S.W.3d at 864. Based on these conclusions, we need not address the Underwriters' argument that Fiamma abandoned its conspiracy claim by failing to include it in its proposed jury charge. We overrule issue 3.C.

### III. MANDATORY AWARD OF ALL COSTS AND REASONABLE AND NECESSARY ATTORNEY'S FEES

Fiamma argues in its fourth issue that because its claims were erroneously dismissed under Rule 91a, the trial court must consider Fiamma's request for costs and fees as the prevailing party. Because we have held the trial court's dismissal was not in error, we need not address this issue. Similarly, we need not address Fiamma's argument that the Underwriters must segregate their attorney's fees because Fiamma conditions this argument on a reversal of at least part of the dismissal.

In its fifth issue, Fiamma argues that the awarded $408 for costs and $36,750 for attorney's fees were supported by no evidence because the deficiencies in Treistman's affidavit and the "secret" nature of the billing records rendered this evidence no evidence at all. The Underwriters argue in their appellate issue that the costs and fees

---

that Fiamma failed to base its conspiracy claim in fact or law because it proffered only conclusory recitations of the Underwriters' specific intent (or meeting of the minds) to further the scheme. *See Bart Turner & Assocs. v. Krenke*, No. 3:13-CV-2921-L, 2014 WL 1315896, at *6 (N.D. Tex. Mar. 31, 2014) (mem. op. & order); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). In other words, the conspiracy allegations amounted to nothing more than a statement that the Underwriters committed conspiracy. These bare recitals did not give the Underwriters fair notice. *See First United*, 514 S.W.3d at 224–25; *Darnell*, 588 S.W.3d at 305; *Beddingfield*, 2018 WL 6378553, at *12–13; *Salazar*, 2018 WL 1610942, at *3–5; *Weizhong Zheng*, 468 S.W.3d at 186; *Dailey*, 445 S.W.3d at 789.

awards were an abuse of discretion because the Underwriters proffered evidence that they incurred more than $680,000 in costs and fees and because the awards did not expressly account for appellate costs and fees.

## A. GOVERNING LAW

Under Rule 91a.7, the trial court was required to award to the Underwriters "all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court." Tex. R. Civ. P. 91a.7. In determining the costs and fees awards, the trial court "must consider evidence." Tex. R. Civ. P. 91a.7.

Although the trial court is required to award attorney's fees to the prevailing party and to consider evidence on the issue, the amount of such an award is a matter within the trial court's discretion that we will not second-guess absent an abuse of that discretion. *See Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 691 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Drake*, 2014 WL 6493411, at *2–3. The trial court's discretion, however, is governed by whether the requested attorney's fees are reasonable and necessary. *See, e.g.*, *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019).

On the other hand, the mandatory award of "all costs" to the prevailing party on a motion to dismiss is not restricted to those that are considered reasonable and necessary; thus, we question whether an abuse-of-discretion standard would apply to review the amount of a mandatory costs award under Rule 91a.7. *Compare Estate of Purgason v. Good*, No. 14-14-00334-CV, 2016 WL 552149, at *3 (Tex. App.—Houston

36

[14th Dist.] Feb. 11, 2016, pet. denied) (mem. op.) ("Whether a particular expense is recoverable under statute or rule as court costs is a question of law and reviewed *de novo.*"), *and Whitley v. King*, 581 S.W.2d 541, 543–44 (Tex. App.—Fort Worth 1979, no writ) (concluding whether court cost authorized is not issue of discretion but of law), *with Rogers v. Walmart Stores, Inc.*, 686 S.W.2d 599, 601 (Tex. 1985) (holding trial court's assessment of typically nonrecoverable costs for good cause under Rule 141 subject to abuse-of-discretion review), *and Headington Oil Co. v. White*, 287 S.W.3d 204, 212 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (same). *See generally Ochoa-Bunsow v. Soto*, 587 S.W.3d 431, 446 (Tex. App.—El Paso 2019, pet. denied) ("The trial court's role in regard to costs of court is to adjudicate which party bears those costs, not to determine their amount."). But Fiamma and the Underwriters do not dispute in their briefing that an abuse-of-discretion standard applies to our review of both reasonable and necessary fees and all costs. Because the applicable standard is not case dispositive here and in the absence of cogent briefing targeted to the appropriate review standard, we will follow the parties' lead and apply an abuse-of-discretion standard to both awards.

## B. COSTS

In her affidavit, Treistman averred that the Underwriters had incurred $12,410 in costs with respect to the dismissed claims against them. She stated that these costs were "detailed in the invoices." The Underwriters explain that the "disbursement"

37

entries in the billing records equate to their requested costs.[18] These disbursements show charges for entries such as Westlaw research, travel expenses, business meals, taxis, document reproduction, "outside services," and filing fees. The trial court clerk's bills reflect $3,849 in taxed costs, including $3,560 to prepare the clerk's records for appeal. In its order, the trial court awarded the Underwriters $408 in costs.[19]

Fiamma argues that the Underwriters were entitled to recover none of their requested costs because they did not identify a statute or rule authorizing each item and because Treistman's costs opinion was "conclusory, legally insufficient, and lack[ed] foundational support." The Underwriters respond that "all costs" in Rule 91a.7 unqualifiedly means any cost no matter its character; thus, they were entitled to each of the disbursements noted in the billing records even if not commonly considered a court cost.

A trial court's role in awarding costs is to "adjudicate which party or parties is to bear the costs of court, not to determine the correctness of specific items." *Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see*

---

[18]The disbursement portions of the billing records were not redacted; thus, we will not address Fiamma's complaints about the form of the billing records in our costs discussion. Our review of the billing records reveals $12,410.24 in disbursement entries.

[19]The record does not clearly show from where this amount was derived. The billing records reflect $308 as a "Court Filing Fee (Charged By Court)," but the numerous disbursements in the billing records and the taxed "fees" in the bills of costs prevent even an informed guess.

*Wood v. Wood*, 320 S.W.2d 807, 812 (Tex. 1959); *Ochoa-Bunsow*, 587 S.W.3d at 446; *Pitts v. Dall. Cnty. Bail Bond Bd.*, 23 S.W.3d 407, 417 (Tex. App.—Amarillo 2000, pet. denied) (op. on reh'g); *cf.* Tex. Civ. Prac. & Rem. Code Ann. § 31.007(a) (providing successful party not required to formally prove its costs to the trial court in order to have costs adjudged in its favor); Tex. R. Civ. P. 131 (providing successful party entitled to recover all incurred costs from adversary). The trial court clerk carries the ministerial duty of taxing a specific amount of costs. *Madison*, 241 S.W.3d at 158 (citing *Wood*, 320 S.W.2d at 813). Accordingly, it was an abuse of discretion[20] for the trial court to tax a specific amount of costs. *See* Tex. R. Civ. P. 622; *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, No. 01-17-00671-CV, 2019 WL 1285115, at *15 (Tex. App.—Houston [1st Dist.] Mar. 21, 2019, pet. filed) (mem. op.); *United Servs. Auto. Ass'n v. Hayes*, 507 S.W.3d 263, 277–78 (Tex. App.—Houston [1st Dist.] 2016, pets. granted, judgm't vacated w.r.m.).

Rule 91a.7 entitles the prevailing party to a recovery of "all costs." The Underwriters were the prevailing parties. Accordingly, the Underwriters are entitled to an award of all costs as taxed by the trial court clerk. The trial court, however, is not tasked with an accounting of the specific recoverable costs; thus, any alleged deficiency in Treistman's affidavit regarding the amount of or specific authorization for each cost

---

[20]Again, we do not hold that an abuse-of-discretion standard applies to this issue; we only review it as such based on Fiamma's and the Underwriters' briefing. Even so, the trial court's award of a specific cost amount would not survive a de novo review either.

is not relevant to the trial court's determination of who is entitled to recover its costs as the prevailing party under Rule 91a.7. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.007(a); *United Servs. Auto.*, 507 S.W.3d at 277–78. We overrule the costs portion of Fiamma's fifth issue but sustain in part the costs portion of the Underwriters' sole issue.

## C. ATTORNEY'S FEES

Unlike Rule 91a.7's authorization of an award of "all costs," the amount of a mandatory award of attorney's fees to the prevailing party clearly is subject to the trial court's discretion under a reasonable-and-necessary standard. Tex. R. Civ. P. 91a.7; *see Cypress Creek*, 548 S.W.3d at 693. Fiamma asserts that the Underwriters did not prove that their requested $668,447 in attorney's fees was reasonable and necessary; the Underwriters assert that it was an abuse of discretion to award only $36,750 in attorney's fees because all of their requested fees were incurred with respect to the challenged claims in the trial court. They further argue that the trial court abused its discretion by failing to expressly award any amount for conditional, appellate attorney's fees. For the following reasons, we overrule the fees portion of Fiamma's fifth issue and sustain the fees portion of the Underwriters' issue.

### 1. Competency of the Underwriters' Evidence

We first address Fiamma's arguments that because of the flawed nature and timing of the Underwriters' evidence of attorney's fees, the Underwriters produced no evidence to support an award.

40

Fiamma argues that the redacted billing records were never admitted into evidence and even if they were, they were produced too late to be considered.[21] The Underwriters provided the unredacted billing records to the trial court by the July 18 deadline; they provided the redacted billing records to Fiamma the next day. Even if the production of the redacted billing records to Fiamma ran afoul of the deadline to provide evidence to the trial court, we cannot conclude that the one-day delay harmed Fiamma, as the Underwriters assert in their briefing. *See* Tex. R. App. P. 44.1(a).

In any event, the trial court admitted the redacted records for the purposes of the hearing on Fiamma's motion to compel production of the unredacted billing records, which was filed in the context of the Underwriters' request for attorney's fees as the prevailing parties. After the 141st District Court recused itself at Fiamma's request, the 342nd District Court clearly had at least the redacted billing records to

---

[21]Fiamma does not seem to raise on appeal its prior argument that the trial court could not consider the billing records because they were redacted. Indeed, some courts have implicitly approved of the practice, especially when (as here) the redactions are limited and targeted and do not prevent a determination of whether the fees were reasonable and necessary. *See, e.g.*, *KBIDC Invs., LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at \*22–23 (Tex. App.—Dallas Oct. 9, 2020, no pet. h.) (mem. op. on reh'g); *In re S.C.*, No. 05-18-00629-CV, 2020 WL 3046203, at \*6 (Tex. App.—Dallas June 8, 2020, pet. filed) (mem. op.); *Sentinel Integrity Sols., Inc. v. Mistras Grp., Inc.*, 414 S.W.3d 911, 928–29 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *cf. McGibney v. Rauhauser*, 549 S.W.3d 816, 821–22 (Tex. App.—Fort Worth 2018, pet. denied) (holding "heavily redacted" billing records insufficient to allow trial court to make reasonable-and-necessary finding). In short, the operative question is whether the trial court had sufficient evidence to exercise its discretion, not whether the billing records were or were not redacted.

review. These records had previously been admitted as an exhibit (over no objection) at the hearing regarding the Underwriters' proof of attorney's fees, and the 342nd District Court expressly stated that it had copies of and would consider the Underwriters' redacted "bills" in its review of "everything." Thus, the redacted billing records were part of the record, and the trial court could consider them in determining the Underwriters' reasonable and necessary attorney's fees. *See, e.g., Swarovski v. Enger*, No. 05-17-00398-CV, 2018 WL 1357483, at *4–5 (Tex. App.—Dallas Mar. 16, 2018, no pet.) (mem. op.).

Fiamma next contends that Treistman's and Hoffman's affidavits were conclusory and, therefore, no evidence of the Underwriters' attorney's fees. Fiamma specifies that Treistman did not establish the qualification of each attorney and paralegal that billed hours to the Underwriters, did not provide the hourly rate for each person, and failed to establish that each billed task was incurred with respect to the challenged causes of action. Fiamma's beef with Hoffman's affidavit is that he failed to use the word "reasonable" in stating his discounted hourly billing rate for the Underwriters' co-defendant, rendering his opinion conclusory. Although Fiamma did not secure a ruling on these objections to the affidavits, an objection that an affidavit is conclusory is a substantive one that is not subject to preservation-of-error requirements. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (per curiam).

"[A] claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to

42

support the fee award sought." *Rohrmoos Venture*, 578 S.W.3d at 501–02. At a minimum, such proof must include evidence of (1) the particular services performed, (2) who performed the services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Id.* (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762–63 (Tex. 2012)); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (op. on reh'g); Tex. Disciplinary Rules Prof'l Conduct R. 1.04(b), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (art. X, § 9).

Treistman's affidavit, consistent with these parameters, walked through the applicable factors and averred that the hourly rates charged and the fees incurred by the Underwriters in the trial court were reasonable and necessary. Hoffman's affidavit substantively pointed to the reasonableness of his hourly rate by explaining his experience, the work he performed for PNC in the same case, and the discounted rate he charged for those services.

The Underwriters fully and cogently discuss Treistman's and Hoffman's affidavits and the reasonable-and-necessary factors in their briefing, and there is no need to repeat those arguments here. For purposes of this discussion, it is enough to state that the affidavits go beyond mere "generalities" and were not, therefore, impermissibly conclusory. *Rohrmoos Venture*, 578 S.W.3d at 496; *cf., e.g., State v. Buchanan*, 572 S.W.3d 746, 750–51 (Tex. App.—Austin 2019, no pet.) (concluding factually insufficient evidence supported jury's award of no attorney's fees to prevailing party);

43

*McCalla v. Ski River Dev., Inc.*, 239 S.W.3d 374, 381 (Tex. App.—Waco 2007, no pet.) (recognizing evidence on each reasonableness factor not required to award attorney's fees). Further, because an award of attorney's fees was mandatory under Rule 91a.7, Treistman's affidavit, Hoffman's affidavit, and the redacted billing records were "enough to present the issue to the trial court" for its determination. *El Apple*, 370 S.W.3d at 762 (discussing *Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010)); *cf. Buchanan*, 572 S.W.3d at 750 ("When a statute provides for mandatory recovery of attorney's fees, the trial court has no discretion but to award them if they are pleaded and proved."); *Hagedorn v. Tisdale*, 73 S.W.3d 341, 353 (Tex. App.—Amarillo 2002, no pet.) (recognizing "entire record" may be considered in determining reasonableness of fee award).

## 2. Reasonable and Necessary

Part of Fiamma's argument that no evidence shows that the Underwriters' attorney's fees were reasonable and necessary is its contention that the Underwriters did not show that each claimed fee was "incurred with respect to [the] Rule 91a dismissal." In making this argument, Fiamma points to multiple billing entries and attacks the Underwriters' failure to identify that each billed task related to the motion to dismiss. The Underwriters assert that the great weight and preponderance of the evidence demonstrated higher fees than were awarded, rendering the awarded amount an abuse of discretion.

44

Rule 91a.7 requires an award of reasonable and necessary attorney's fees that a prevailing party "incurred with respect to the challenged cause of action in the trial court." Tex. R. Civ. P. 91a.7; *see Weizhong Zheng*, 468 S.W.3d at 187. Awarded attorney's fees must be "associated with" the challenged cause of action, "*including* fees for preparing or responding to the motion to dismiss." Tex. R. Civ. P. 91a.7 2013 cmt. (emphasis added); *see Drake*, 2014 WL 6493411, at *3. Accordingly, any fees so associated are not limited to those incurred only with regard to filing the motion to dismiss. *See Drake*, 2014 WL 6493411, at *3. Both reasonableness and necessity are fact questions that are, of course, determined based on the proffered evidence. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Roth v. JPMorgan Chase Bank, N.A.*, 439 S.W.3d 508, 514 (Tex. App.—El Paso 2014, no pet.).

The Underwriters successfully moved to dismiss each claim brought against them; thus, their attorney's fees necessarily were incurred with respect to the challenged causes of action even though the redactions arguably prevent identifying which specific claim the task was related to. As the Underwriters point out in their briefing, the trial court seemed to have arrived at its $36,750 award by including only tasks in the redacted billing records that clearly referred to the renewed motion to dismiss.[22] We agree with the Underwriters that these amounts minus the stated client discounts match the trial

---

[22]Even though Fiamma filed a Rule 202 petition that was eventually denied, the Underwriters did not request any of their fees incurred in responding to this petition, which was eventually denied.

45

court's awarded amount "to the dollar." Although we understand that the Underwriters were not necessarily entitled to recover all of their requested but contradicted attorney's fees, *see Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam), they were entitled to those fees that were reasonable and necessary regarding the dismissed claims and they were not limited to those fees incurred only with regard to the renewed motion to dismiss. *See Drake*, 2014 WL 6493411, at *3. Limiting the Underwriters to only those fees directly traceable to the renewed motion to dismiss was an error of law that equates to an abuse of discretion. *Accord Steiger v. J.S. Builders, Inc.*, 663 A.2d 432, 436 (Conn. App. Ct. 1995) (holding trial court abused its discretion by failing to consider all reasonableness factors in finding amount of attorney's fees). *See generally Bocquet*, 972 S.W.2d at 21 (recognizing fee award is an abuse of discretion if trial court rules "arbitrarily, unreasonably, or without regard to guiding legal principles, . . . or to rule without supporting evidence."). Further, an award of approximately 5% of the Underwriters' proven attorney's fees, which necessarily were incurred with respect to the challenged claims in the trial court and with respect to claims that Fiamma argued arose from "one of the biggest frauds and heists . . . that has ever existed," is against the great weight and preponderance of the evidence presented in this case. *See Midland W. Bldg. L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex. 2009) (per curiam); *Bocquet*, 972 S.W.2d at 21. And we decline Fiamma's invitation to parse each billed item to determine if each meets the reasonableness factors. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (holding "trial courts need not, and indeed should not,

46

become green-eyeshade accountants" because "essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection").

Because the evidence was insufficient to support the awarded amount of attorney's fees (to the extent those fees were for fees incurred in the trial court), the appropriate disposition is to reverse the award and remand the issue for the trial court to redetermine a reasonable and necessary amount for trial attorney's fees. *See Long v. Griffin*, 442 S.W.3d 253, 255–56 (Tex. 2014) (per curiam); *El Apple*, 370 S.W.3d at 764; *Midland W. Bldg.*, 300 S.W.3d at 739; *Great Am. Rsrv. Ins. Co. v. Britton*, 406 S.W.2d 901, 907 (Tex. 1966); *Universal MRI & Diagnostics, Inc. v. Med. Lien Mgmt. Inc.*, 497 S.W.3d 653, 665 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *cf. City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam) (remanding for recalculation of attorney's fees when evidence of work performed existed but was insufficient to support the amount awarded in judgment); *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 124 (Tex. 2009) ("[W]hen there is some evidence of damages, but not enough to support the full amount, it is inappropriate to render judgment.").

### 3. Appellate Fees

The trial court awarded $36,750 in "attorney's fees" without delineating whether this amount included appellate attorney's fees. The Underwriters attack the trial court's failure to expressly include appellate attorney's fees in its fees award. The Underwriters

requested such fees in the trial court but proffered no opinion testimony of the reasonably expected amount of necessary appellate attorney's fees.

The Underwriters argue that Treistman's affidavit regarding the Underwriters' attorney's fees incurred in the trial court and the complexity of the case equated to implicit evidence of reasonable and necessary appellate fees. But Treistman included no statement regarding her belief of the reasonable appellate fee charged or of the required services if the dismissal were appealed. *See KBIDC Invs.*, 2020 WL 5988014, at *24; *Assoun v. Gustafson*, 493 S.W.3d 156, 168 (Tex. App.—Dallas 2016, pet. denied); *cf. State & Cnty. Mut. Fire Ins. Co. v. Walker*, 228 S.W.3d 404, 408–10 (Tex. App.—Fort Worth 2007, no pet.) (concluding sufficient evidence supported award for appellate attorney's fees when attorney testified over no objection to reasonable fee charged for necessary services if case appealed). The Underwriters' mere request for appellate fees cannot, standing alone, serve as evidence of their reasonableness and necessity.

To prove a conditional award of appellate attorney's fees, not only were the Underwriters required to make a request for such fees, they must also have provided "opinion testimony about the services [they] reasonably believe[] will be necessary to defend the appeal and a reasonable hourly rate for those services." *Yowell v. Granite Operating Co.*, No. 18-0841, 2020 WL 2502141, at *13 (Tex. May 15, 2020); *see KBIDC Invs.*, 2020 WL 5988014, at *23; *cf. Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015) (holding if award of trial attorney's fees is mandatory under authorizing statute, award of appellate attorney's fees is likewise mandatory if proof of reasonable fees presented).

48

The Underwriters did not do so; thus, the evidence of the reasonableness and necessity of appellate attorney's fees was legally insufficient. *See KBIDC Invs.*, 2020 WL 5988014, at *23–24. Even so, because the award of appellate attorneys fees was mandatory under Rule 91a.7, *see Weizhong Zheng*, 468 S.W.3d at 188, the issue of reasonable and necessary appellate attorney's fees to the Underwriters as the prevailing parties must be remanded to the trial court for a redetermination. *See Rohrmoos Venture*, 578 S.W.3d at 484–85, 506; *Long*, 442 S.W.3d at 256; *KBIDC Invs.*, 2020 WL 5988014, at *24; *Sloane v. Goldberg B'Nai B'Rith Towers*, 577 S.W.3d 608, 622 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Jones v. Patterson*, No. 11-17-00112-CV, 2019 WL 2051301, at *10 (Tex. App.— Eastland May 9, 2019, no pet.) (mem. op.); *Thomas*, 559 S.W.3d at 645.

## IV. CONCLUSION

Although Rule 91a is a procedural device that must be strictly construed and narrowly applied, we conclude that Fiamma's claims against the Underwriters have no basis in law or fact as pleaded thereby failing to give the Underwriters fair notice; thus, the trial court appropriately dismissed the claims. We affirm the trial court's June 15, 2018 order granting the Underwriters' renewed motion to dismiss. *See* Tex. R. App. P. 43.2(a).

But because the trial court abused its discretion by limiting the Underwriters' recovery for their trial attorney's fees to only those arising from the renewed motion to dismiss and by excluding those fees that were incurred with respect to the challenged causes of action in the trial court, all of which were dismissed, the awarded amount was

49

likewise an abuse of discretion. We reverse the award for attorney's fees in the trial court's January 31, 2019 order and remand that issue for the trial court to redetermine the Underwriters' reasonable and necessary trial attorney's fees. *See* Tex. R. App. P. 43.2(d), 43.3. Similarly, even though the Underwriters' evidence of appellate attorney's fees was legally insufficient to show reasonableness and necessity, we remand this issue for the trial court to redetermine and enter an express award for appellate attorney's fees because such an award is mandatory under Rule 91a.7. Finally, we reverse the specific amount of costs awarded by the trial court and remand for the taxation of costs by the trial court clerk; however, we affirm the trial court's determination that the Underwriters were entitled to a costs award under Rule 91a.7 as the prevailing parties. *See* Tex. R. App. P. 43.2(a), (d).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: October 29, 2020