**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed August 9, 2016.**

In The

# Fourteenth Court of Appeals

### NO. 14-15-00420-CV

## UNIVERSAL MRI AND DIAGNOSTICS, INC., Appellant

## V.

## MEDICAL LIEN MANAGEMENT INC.  D/B/A BRIDGEWELL, Appellee

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2013-25789**

## O P I N I O N

In this case, appellant Universal MRI & Diagnostics, Inc. assigned three patient accounts receivable to another party, which in turn assigned them to appellee Medical Lien Management Inc. d/b/a BridgeWell (MLM).  MLM sued Universal to recover money that Universal was paid on those accounts after they were assigned, alleging causes of action for fraud, breach of contract, and money had and received.  The trial court granted summary judgment in favor of MLM and made the following awards: $208,030 in actual, consequential, and exemplary damages for fraud; $52,018 in damages, attorneys' fees, and costs for breach of contract; and $49,918 in damages,

attorneys' fees, and costs for money had and received.

On appeal, Universal challenges the summary judgment on each cause of action. With respect to fraud, we hold MLM failed to establish conclusively that Universal had no intention of performing at the time it assigned the accounts. We therefore reverse the judgment of liability and awards of damages for fraud.

As to breach of contract, Universal argues that it is not liable because the account assignments were "without recourse." We conclude, however, that this provision simply protects Universal from liability if a patient does not pay; it does not preclude recovery of a patient's payment incorrectly made to Universal. We therefore affirm the judgment of liability and the awards of damages and costs for breach of contract.

Regarding MLM's quasi-contractual recovery for money had and received, the general rule is that there can be no such recovery when a valid, express contract covers the subject matter of the parties' dispute. Even if MLM could overcome that rule here, it has not conclusively proven its damages. We therefore reverse the judgment for money had and received.

Universal also challenges the award of attorneys' fees. MLM elected to use the lodestar method to prove its attorneys' fees, and the evidence submitted does not conclusively establish the amount of time spent on various tasks or who worked on those tasks. We therefore reverse the award of fees, and we remand the case to the trial court for further proceedings.

## BACKGROUND

Cedric Rigsby, Adriana Gonzalez, and Kaiser Lashkari (collectively, the patients) suffered personal injuries that required medical treatment. Each sought treatment from Universal using a letter of protection sent by his or her attorney. The letter of protection allowed the patients to receive necessary medical treatment without having to pay the

2

cost of such treatments up front. Instead, Universal provided the patients with medical treatment and created patient accounts for each of them. The total cost of treatments incurred for all three was $7,700: $900 for Rigsby, $4,500 for Gonzalez, and $2,300 for Lashkari.

On February 5, 2010, Universal sold "all right, title, and interest" in the three patients' accounts to A/R Net, LLC. On February 17, A/R Net sold "all right, title, and interest" in the three accounts to BridgeWell, a division of MLM. MLM filed financing statements for each account on February 26.

On September 8, 2010, Universal accepted a $1,150 payment from the law firm representing Lashkari in his personal injury suit. In 2012, Universal accepted a $4,500 payment from another firm, Ramji & Associates, which represented seven plaintiffs including Gonzalez and Rigsby. MLM learned of these settlements only after contacting the patients' attorneys to collect payment on the accounts. The attorneys responded that Universal had accepted "reduced settlements" on the accounts.

MLM filed suit against Universal on April 30, 2013, after its attempts to collect the reduced settlement amounts from Universal failed. MLM alleged claims for breach of contract, fraud, and money had and received.[1]

On April 11, 2014, MLM filed a traditional motion for summary judgment on its causes of action and sought damages and attorneys' fees. MLM also provided the following summary judgment evidence: an affidavit from Daniel Filbert, its employee and records custodian; the assignments from Universal to A/R Net; the assignments from A/R Net to MLM; an affidavit from K. Bo Wilson regarding attorneys' fees; the account statements for Rigsby, Gonzalez, and Lashkari; Universal's settlement

---

[1] MLM also filed suit against Ramji and Associates PC for breach of contract, quantum meruit and unjust enrichment, tortious interference with existing contract, and promissory estoppel. These claims were non-suited with prejudice on March 25, 2014.

3

agreement with Rigsby and Gonzalez; Ramji & Associates' settlement check to Universal; a response letter from Lashkari; Universal's account statement of the Lashkari settlement; and various other documents and discovery responses.

The trial court granted this motion. On its fraud claim, the trial court awarded MLM actual damages of $7,750, consequential damages of $44,226, and exemplary damages of $156,054. On its breach of contract claim, the court awarded MLM compensatory damages of $7,750, attorney's fees of $44,008, and cost of suit of $260. On its money had and received claim, the court awarded MLM damages of $5,650, attorney's fees of $44,008, and costs of suit of $260. The judgment does not include an election of remedies. This appeal followed.

ANALYSIS

## I.    Summary judgment standards

We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

In a traditional motion for summary judgment, the movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A plaintiff moving for summary judgment must conclusively establish all essential elements of its cause of action as a matter of law. *See Wright v. Gundersen*, 956 S.W.2d 43, 47 (Tex. App.—Houston [14th Dist.] 1996, no writ) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979)). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

"The non-movant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense." *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). Once a movant establishes a right to summary judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996); *Williams v. Bell*, 402 S.W.3d 28, 35 (Tex. App.—Houston [14th Dist.] 2013 no pet.). Summary judgement evidence raises a genuine issue of fact, if in light of the evidence, reasonable and fair-minded jurors could differ in their conclusions. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). In reviewing a summary judgment motion, we take as true all evidence favorable to the non-movant and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Navy v. College of the Mainland*, 407 S.W.3d 893, 898 (Tex. App.—Houston [14th Dist.] 2013, no writ).

## II. MLM failed to establish conclusively that Universal committed fraud by making a misrepresentation knowingly or recklessly.

In a single issue with multiple subparts, Universal contends that the trial court erred in granting summary judgment for MLM. We address Universal's challenges to the summary judgment beginning with the cause of action that would afford MLM the greatest recovery: fraud.

Universal argues that MLM failed to offer summary judgment evidence conclusively establishing all elements of fraud.[2] A plaintiff moving for summary judgment on a fraud claim must prove that the defendant (1) made a material

---

[2] MLM argues Universal waived the right to complain about the sufficiency of MLM's evidence because Universal did not make this argument in its summary judgment response. Although Universal's response did not include this argument, "[s]ummary judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right." *Shafighi v. Texas Farmers Inc. Co.*, 2013 WL 1803609, at *2 (quoting *City of Houston*, 589 S.W.2d at 678). Thus, MLM must establish its right to summary judgment through conclusive evidence regardless of the content of Universal's response.

misrepresentation; (2) knew the representation was false or made recklessly without any knowledge of its truth; (3) made the representation with the intent that the plaintiff act on the representation or intended to induce the plaintiff's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on the representation. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011) (discussing elements of fraud). "[A] representation is recklessly made if the speaker knows that he does not have sufficient information or basis to support it, . . . or if he realizes that he does not know whether or not the statement is true." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 527 (Tex. 1998).

In its motion for summary judgment and appellate brief, MLM argues that Universal made representations that it was assigning its right, title, and interest in the accounts with knowledge that it would later renege by collecting on the accounts it had assigned, or recklessly without knowledge that it would abstain from collection. Alternatively, MLM argues that Universal made representations of the amounts due on the accounts with knowledge that the receivable balances and security interests regarding the accounts would not allow recovery of the represented balances, or it represented those amounts recklessly without actual knowledge of the amounts owed on the accounts.[3]

To show that Universal had no intention of performing when it assigned the accounts or recklessly represented the assignments or amounts due, MLM points to the affidavit of its Vice President of Operations, Daniel Filbert. This affidavit addresses MLM's reliance on Universal's account statements showing the amount due and the damages MLM suffered due to its reliance.[4] MLM also cites several documents,

---

[3] MLM also argues that Universal made false representations about the accounts by failing to deliver all right, title, and interest in the accounts. Because a failure to deliver is not a representation, this argument cannot support MLM's fraud claim.

[4] Universal argues that Filbert's statements regarding detrimental reliance are conclusory and

including the account statements, the assignments, and documents reflecting Universal's later acceptance of reduced amounts in settlement of the accounts.[5]

Although this affidavit and these documents support MLM's claim for breach of contract and certain elements of its fraud claim, they do not address Universal's intentions regarding performance or the state of its knowledge at the time it made representations about the assignments and amounts due. The failure to perform the terms of a contract generally is a breach of contract, not a tort, unless there is evidence that a party entered into the contract with no intention of performing. *IKON Office Sol., Inc. v. Eifert*, 125 S.W.3d 113, 130 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex. 1992)). Here, MLM's evidence does not conclusively establish the necessary fraud element that, at the time of the representations, Universal knew either that it would not perform or that it did not have sufficient information to support the representations. *See Exxon Corp.*, 348 S.W.3d at 217; *Johnson & Higgins*, 962 S.W.2d at 527.

In its brief, MLM asserts that Universal's failure to respond to demand letters for the monies owed on the disputed accounts shows Universal's intent not to adhere to the provisions of the contract. We disagree. Failure to respond to demand letters sent in August 2012 is not conclusive evidence of a party's intent to dishonor a contract at the

---

the affidavit does not show the basis of his knowledge. We need not address these arguments because, as we will explain, MLM's proof of fraud is deficient for other reasons.

[5] In particular, the cited documents are Universal's statements of each patient's account, the assignments of the accounts from Universal to A/R Net, Universal's responses to MLM's requests for admissions, Universal's settlement agreement with Rigsby and Gonzalez, Ramji & Associates' settlement check to Universal, a response letter from Lashkari, and Universal's account statement of the Lashkari settlement. Universal argues on appeal that these documents were not properly authenticated. Because Universal did not obtain a ruling from the trial court on that objection, we do not consider it. *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 436 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

time it was formed in February 2010.

Because MLM did not meet its burden of conclusively establishing all elements of its cause of action, it was not entitled to summary judgment. *See Wright*, 956 S.W.2d at 47. We therefore reverse the trial court's judgment of liability based on fraud and its awards of actual, consequential, and exemplary damages for fraud, and we remand for further proceedings regarding the fraud claim.

### III. MLM conclusively proved breach of the assignment contracts and damages but not its claim for money had and received or its entitlement to attorneys' fees.

#### A. Liability and damages for breach of contract

Universal argues that the trial court erred in granting summary judgment for breach of contract because the assignments' "without recourse" language precludes MLM's claim. To obtain summary judgment for breach of contract, the plaintiff must conclusively establish (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages were sustained as a result of the breach. *See Moe v. Option One Mortg. Corp.*, 14-07-00550-CV, 2009 WL 136892, at *3 (Tex. App.—Houston [14th Dist.] Jan. 20, 2009) (citing *Winchek v. Am. Express Travel Related Servs. Co., Inc.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.)).

As to the first element, MLM asserted in its motion for summary judgment that Universal executed valid enforceable contracts assigning the accounts. MLM's supporting evidence included Universal's assignments of the Rigsby, Gonzalez, and Lashkari accounts to A/R Net, as well as Universal's admission that it executed the assignments.[6] MLM also contended that it is entitled to assert A/R Net's rights under

---

[6] Requests for Admission 8 states: "Admit that on or about February 5, 2010, You executed Assignment documents with A/R Net concerning the Accounts of Cedric Rigsby, Adriana Gonzalez, and Kaiser Lashkari, copies of which are attached hereto respectively as Exhibits 'A,' 'B,' and 'C.'"

the contract, and it provided the trial court with A/R Net's assignment of the Rigsby, Gonzalez, and Lashkari accounts to MLM. As assignee, MLM stands in the shoes of its assignor A/R Net and may assert those rights which A/R Net could assert. *See Eaves v. Unifund CCR Partners*, 301 S.W.3d 402, 406 (Tex. App.—El Paso 2009, no pet.) (citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000); *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex. 1994)). Universal offered no contrary evidence and did not deny the account in its answer. *See* Tex. R. Civ. P. 93(10). Accordingly, the record on summary judgment conclusively shows that Universal entered into valid contracts in which it assigned its right, title, and interest in the disputed accounts to A/R Net, and that MLM obtained A/R Net's interest, including any causes of action arising from the assignment of accounts which A/R Net could have asserted.

MLM argued that it had "performed its obligations under the contract and/or tendered payment of consideration." As supportive evidence, it offered the affidavit of Daniel Filbert, which states MLM paid valuable consideration for the assignment of the accounts. MLM also pled that all conditions precedent have been performed or have occurred, and Universal did not deny any conditions precedent in its answer. *See* Tex. R. Civ. P. 54. The evidence conclusively establishes MLM performed as required under the contract.

MLM further asserted that Universal breached the assignments by "failing to deliver the accounts and/or Security Interests with the represented receivable balances and failed to deliver all of its rights, title, and interest in the accounts, and/or it failed to abstain from all collection activity regarding the accounts" after they were transferred. In support of this assertion, MLM submitted the following documents: Universal's statements of each patient's account, Universal's assignments to A/R Net, Universal's settlement agreement for Rigsby and Gonzalez, Ramji and Associates' settlement check

Universal responded "Admit."

9

to Universal, a response letter from Lashkari, and Universal's account statement of the Lashkari settlement. This evidence conclusively establishes that Universal breached the assignment contracts by either not transferring all of its right, title, and interest in the accounts to A/R Net under the contracts or by collecting on the accounts after they had been assigned.

Finally, MLM asserted that it suffered damages of at least $7,750, not including costs or attorneys' fees. As support for the amount of damages, MLM pointed to evidence including Filbert's affidavit, Universal's statements of each patient's account showing a total of $7,750 due, and Universal's admission that it had not paid MLM any money on the patients' accounts. Filbert's affidavit states that after MLM paid valuable consideration for the assignment of the accounts, it learned that Universal, through an unauthorized settlement agreement, had negotiated and accepted a reduced amount of funds for these accounts. This evidence conclusively establishes that MLM sustained damages as a result of Universal's breach of the assignment contracts, and Universal has not briefed any challenge to the amount of damages awarded by the trial court.

Once MLM, as the movant, conclusively established all elements of its claim for breach of contract, the burden shifted to Universal to raise a genuine issue of material fact that would prevent summary judgment. In its response in the trial court and again on appeal, Universal argues the assignments are "without recourse" and therefore no liability exists for a breach of contract claim.

To support its argument, Universal relies on *Daniel v. Universal CIT Credit Corp.*, 238 S.W.2d 727 (Tex. Civ. App.—Waco), *rev'd on other grounds*, 243 S.W.2d 154 (Tex. 1951). In *Daniel*, the lender on a car-purchase loan assigned the note to an assignee without recourse. The debtor later defaulted on the note and returned the car to the assignee. The assignee asked the assignor lender to buy the car for the remaining balance on the note. When the assignor refused, the assignee sold the car at auction for

10

less than the remaining balance price on the note and sued the assignor for the deficiency. The court held that because the assignment of the note was without recourse, no liability existed under the assignment. *Id.* at 728. The Texas Uniform Commercial Code contains a similar rule of non-liability for indorsers of negotiable instruments without recourse. *See* Tex. Bus. & Com. Code Ann. § 3.415(b) (West Supp. 2015).

The accounts receivable in this case are not negotiable instruments, however, and we conclude that the *Daniel* rule does not apply to the type of claim brought by MLM. Each assignment states that Universal "hereby assign[s] all our right, title, and interest" in a "Patient Account" for "value received," and that the assignment is "without recourse." Under *Daniel,* the "without recourse" language would protect Universal from liability to MLM on the account if a patient debtor did not pay in full. *See Reynolds Mortg. Co. v. Garrett*, 23 S.W.2d 835, 839 (Tex. App.—Fort Worth 1929, writ dism'd w.o.j.) ("An indorser of a note without recourse specifically declines to assume any responsibility *for its payment.*" (emphasis added)).

Unlike in *Daniel*, however, the debtors in this case paid the debts owed—albeit at a reduced amount—to the assignor instead of the assignee. *Daniel* does not hold that "without recourse" language would preclude the assignee (ultimately MLM) from recovering a patient's payment incorrectly made to the assignor (Universal). Such a holding would be inconsistent with the plain terms of the assignment. The only thing Universal did in exchange for the value it received was to assign "all right" to and "interest" in any payments that might later be made on each "Patient Account." Notwithstanding the "without recourse" language, Universal may be sued for breaching its assignment by claiming a right to or interest in those payments. This conclusion is consistent with the common-law rule that although an indorser of a note "without recourse" has no responsibility to pay on the note, it may still be sued on any promises

made in connection with the transfer. *See Miller v. Stewart*, 214 S.W. 565 (Tex. Civ. App.—Fort Worth 1919, no writ).

For these reasons, Universal failed to show a genuine issue of material fact to defeat summary judgment of MLM's claim for breach of contract. We therefore affirm the trial court's grant of summary judgment as to liability for breach of contract as well as the award of compensatory damages. Universal does not separately challenge the award of court costs.

### B.    Money had and received

As a general rule, there can be no recovery under a quasi-contract theory—such as money had and received—when a valid, express contract covers the subject matter of the parties' dispute. *See Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). As discussed above, the parties had an express assignment contract that Universal breached. Yet even if MLM could maintain a claim for money had and received, the trial court erred in rendering summary judgment on that claim because MLM has not proven conclusively that it is entitled to the award of $5,650 in damages.

The record shows that Universal received payments of $1,150 from the law firm that represented Lashkari and $4,500 payment from another firm, Ramji & Associates, that represented Gonzalez and Rigsby. The latter payment, however, was to settle the treatment costs owed by seven patients including Gonzalez and Rigsby. The record does not indicate how much of the payment from Ramji & Associates pertains to the amounts owed by Gonzalez and Rigsby. We therefore reverse MLM's judgment of $5,650 for money had and received.

## C.    Attorneys' fees

Universal next challenges the trial court's awards of $44,008 in attorneys' fees for breach of contract and money had and received, arguing that MLM did not show conclusively that the fees were reasonable and necessary.  In particular, Universal asserts that MLM's summary judgment evidence on attorneys' fees does not satisfy the lodestar proof requirements established by the Supreme Court of Texas in *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012), and its progeny.

MLM responds that Universal has waived any challenge to the fee award because it did not explicitly state in its appellate brief that it is challenging the legal sufficiency of the fee evidence.  As explained above, however, the standard on review of a plaintiff's traditional motion for summary judgment is whether the plaintiff conclusively established all essential elements of its claim.  Universal's brief on appeal adequately addresses this standard by arguing that MLM failed to establish the reasonableness and necessity of its fees as a matter of law, and Universal may raise this challenge for the first time on appeal.  *See Auz v. Cisneros*, 477 S.W.3d 355, 359 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Schwartzott v. Maravilla Owners Ass'n, Inc.*, 390 S.W.3d 15, 21 n. 3 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

A party prevailing on a claim for breach of contract may recover reasonable attorney's fees, provided the fees are properly proven.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West Supp. 2015).  The party seeking a fee award bears the burden of proof.  *Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998).  Because this case was disposed of on summary judgment, attorney's fees may be awarded only if the summary judgment evidence conclusively establishes the amount to which the movant is entitled.  *Auz*, 477 S.W.3d at 359.  If the movant chooses to use the lodestar method to establish the amount of reasonable and necessary attorney's fees attributable to successful prosecution of its claim for breach of contract, the *El Apple* proof

13

requirements apply. *Enzo Invs., LP v. White*, 468 S.W.3d 635, 653 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *see Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam); *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) (per curiam); *Auz*, 477 S.W.3d at 359–60. Under the lodestar method, the base fee or "lodestar" is the number of hours reasonably spent by counsel on specific tasks multiplied by a reasonable hourly rate for such work; that fee may be adjusted up or down using a multiplier. *Enzo Invs.*, 468 S.W.3d at 652; *see City of Laredo*, 414 S.W.3d at 734, 736 (holding plaintiff chose lodestar method of proving fees where attorney multiplied estimated hours by hourly rate to determine total fee owed); *Auz*, 477 S.W.3d at 360 (same).

MLM submitted the affidavit of K. Bo Wilson as evidence of its attorneys' fees. In the affidavit, Wilson states MLM agreed to compensate his firm "based on the hourly fee of $100.00 to $350.00." He then states that "based on the Firm's fee agreement, MLM incurred reasonable and necessary attorney [and paralegal] fees in the amount of $44,008 in preparing and drafting MLM's pleadings and motions, discovery, compiling exhibits, and taking other necessary actions to perform the Firm's legal services properly." Wilson's references to the agreed hourly rate and the total amount of fees incurred based on the agreement show that he used the lodestar method. *See Helms v. Swansen*, 12-14-00280-CV, 2016 WL 1730737, at *6–7 (Tex. App.—Tyler Apr. 29, 2016, pet. filed) (mem. op.) (interpreting attorney's fee testimony, which stated hourly rate and requested total amount of fees but did not state number of hours worked, as election to use lodestar method and collecting relevant cases); *Felix v. Prosperity Bank*, 01-14-00997-CV, 2015 WL 9242048, at *3–4 (Tex. App.—Houston [1st Dist.] Dec. 17, 2015, no pet.) (mem. op.) (applying *El Apple* requirements when attorneys seeking fees in connection with claim for breach of contract presented evidence of their hourly rates); *Johnson v. Tex. Serenity Academy, Inc.*, No. 01-14-00438-CV, 2015 WL 1135947, at *8

14

(Tex. App.—Houston [1st Dist.] May 27, 2015, pet. denied) (mem. op.) (applying *El Apple* requirements to affidavit reciting attorney's hourly rate and total amount of fees incurred).

In the affidavit, Wilson also recites the *Andersen* factors for determining a reasonable fee[7] and addresses the application of certain factors specifically, but it does not appear that the fee was either determined or adjusted using those factors. *Cf. El Apple*, 370 S.W.3d at 760–61 (recognizing relevance of factors in adjusting base lodestar fee of hours multiplied by hourly rate). Rather, Wilson refers to the factors as support for the $44,008 in fees incurred under the hourly fee agreement, stating that "[t]hese fees are reasonable and necessary given" the listed factors. Accordingly, we look to the proof requirements of the lodestar method to determine whether MLM has conclusively demonstrated its entitlement to the award of $44,008 in attorneys' fees.

At minimum, the lodestar method requires evidence "of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required." *El Apple*, 370 S.W.3d at 764. "[W]ithout any evidence of the time spent on specific tasks, the trial court ha[s] insufficient information to meaningfully review the fee request." *Long*, 442 S.W.3d at 255; *see Helms*, 2016 WL 1730737, at *6 (explaining that a party must provide evidence "sufficiently specific to allow the factfinder to determine the amount of time spent on a particular task and decide what length of time was reasonable").

In his affidavit, quoted above, Wilson states the range of hourly rates at which MLM agreed to compensate Wilson's firm, generally lists the types of tasks that were performed, and states the total amount of fees incurred. He does not identify the time spent on specific tasks or which attorney or paralegal performed those tasks. Thus, his

---

[7] *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (quoting Tex. Disciplinary R. Prof'l Conduct 1.04, State Bar Rules, Art. 10 § 9, Rule 1.04).

affidavit is similar to the one the Supreme Court rejected in *Long* as "only offer[ing] generalities." 442 S.W.3d at 255.

Although Wilson's affidavit does provide some evidence that MLM incurred attorneys' fees, it is not conclusive proof that an award of $44,008 is reasonable and necessary. *See Felix*, 2015 WL 9242048, at *4. Without any evidence of time spent on specific tasks, the trial court could not meaningfully review the fee request. *Id.*; *see also Helms*, 2016 WL 1730737, at *7. Because the affidavit fails to establish conclusively the amount of MLM's reasonable and necessary attorneys' fees, we reverse the portions of the trial court's judgment awarding MLM attorneys' fees and remand for further proceedings regarding fees. S*ee Felix*, 2015 WL 9242048, at *4.

## CONCLUSION

We reverse the trial court's judgment of liability for fraud and its awards of actual, consequential, and exemplary damages for fraud. We affirm the trial court's judgment of liability and awards of damages and costs for breach of contract. We reverse the judgment for money had and received and the awards of attorneys' fees, and we remand the case to the trial court for further proceedings.

/s/    J. Brett Busby
           Justice

Panel consists of Justices, Christopher, McCally, and Busby.

16