**Affirmed in Part, Reversed in Part, and Remanded and Memorandum Opinion filed November 22, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00284-CV

---

### PAUL G. PARSONS, Appellant

### V.

### TRICHTER & LEGRAND, P.C. AND GARY TRICHTER, Appellees

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2019-54590**

---

### MEMORANDUM OPINION

Appellant Paul G. Parsons ("Parsons") appeals a no-evidence summary judgment granted in favor of appellees Gary Trichter ("Trichter") and Trichter & Legrand, P.C. In one issue, Parsons argues the trial court erred when it granted appellees' no-evidence motion for summary judgment. We affirm in part, reverse in part, and remand for further proceedings.

# I. BACKGROUND

Parsons, a commercial pilot, was arrested for driving while intoxicated ("DWI") in July 2018 in Galveston County, Texas, and he was concerned that this criminal charge would negatively affect the renewal of his pilot's license and, consequently, his ability to earn a living. On July 23, 2018, Parsons signed a flat fee agreement with Trichter & LeGrand, P.C. for representation in the administrative license revocation hearing ("ALR") before the State Office of Administrative Hearings ("SOAH"), and on August 3, 3018, a flat fee agreement with Trichter & LeGrand, P.C. for representation in the DWI 1st offense and ALR proceeding before SOAH.

Parsons became dissatisfied with appellees, alleging the results he had hoped for were not gained in a timely manner and "having discovered that he had been charged more than eight (8) times the going rate for this type of defense in Galveston County, Texas . . . ." Parsons terminated his relationship with Trichter & LeGrand, and on August 8, 2019, filed a lawsuit against the firm and Trichter, asserting causes of actions for violations of the Deceptive Trade Practices Act ("DTPA"), fraud, fraudulent inducement, breach of contract, breach of fiduciary duty, money had and received, and an action for declaratory judgment.

Parsons alleged that Trichter "represented to Parsons that he had extensive experience handling DWI cases for pilots and dealing with the" Federal Aviation Administration ("FAA") and that Trichter would "would personally appear on Parsons' behalf at any hearings and, if necessary, at trial." Appellees charged Parsons $50,000.00 for representation in the criminal matter and $5,000.00 for representation in the ALR proceeding "plus" $1,000.00. Parsons alleged that he then terminated the relationship with appellees after paying appellees $31,000.00. Parsons hired a different law firm for $10,000.00, received deferred adjudication

2

for the DWI charge, and thereafter "learned from the FAA that he would not have lost his pilot's license if convicted of a DWI 1st offense."

On March 3, 2021, appellees filed a no-evidence motion for summary judgment, arguing that: (1) the DTPA generally does not apply to attorneys, and that "[t]here is no evidence that [appellees] made any express misrepresentation of any material fact [and] there is no evidence of any conduct of [appellees] that can be considered a violation of the DTPA"; (2) the fraud and fraudulent inducement claims fail because there was no evidence that appellees made a material false representation to Parsons, that appellees were aware of any false material representation, that appellees made a representation recklessly without knowledge of its truth, and that Parsons relied on any material false representation made by appellees; (3) the breach-of-contract claim fails because "there is no evidence that [appellees] breached the contract; quite to the contrary, the contract was breached by [Parsons] when he failed to honor all of his obligations under the contract"; (4) the breach-of-fiduciary-duty claim fails because "the fee was not unconscionable and there is no evidence that it was"; and (5) the money-had-and-received claim fails because it "is not a proper claim or cause of action based on the facts pled" and "there is no evidence that [appellees] have and hold money that is owed by or belongs to" Parsons.

Parsons filed a response to appellees' no-evidence motion for summary judgment and attached declarations by Parsons and by Mark Thiessen, a criminal defense trial attorney in Houston, Texas. On April 21, 2021, the trial court signed a final judgment granting appellees' no-evidence motion "on each and every cause of action pled by [Parsons] and RENDERS judgment for [appellees] . . . . This judgment finally disposes of all claims and all parties, and is appealable." This

appeal followed.[1]

## II.  DISCUSSION

In his sole issue, Parsons argues that the trial court erred when it granted appellees' no-evidence motion for summary judgment. Parsons argues that (1) appellees misrepresented the scope and applicability of the professional services exemption in the DTPA; (2) appellees failed to plead the professional services exemption as an affirmative defense or otherwise establish their entitlement to summary judgment as a matter of law; (3) Parsons presented sufficient evidence to raise a genuine issue of material fact on his misrepresentation claims under the DTPA; (4) appellees' no-evidence motion on Parsons' failure to disclose and unconscionability claims did not challenge any specific elements of those claims; (5) Parsons raised a genuine issue of material fact on his failure to disclose and unconscionability claims under the DTPA; (6) Parsons raised a genuine issue of material fact on his fraud and fraudulent inducement claims; (7) Parsons raised a genuine issue of material fact on his breach-of-contract claim; (8) appellees could not move for a no-evidence summary judgment on any prior material breach defense because they did not plead this defense; (9) Parsons raised a genuine issue of material fact on his breach of fiduciary duty claim; (10) appellees could not move for a no-evidence summary judgment on a pure question of law in connection with Parsons' money had and received claim; and (11) Parsons raised a genuine issue of material fact on his money had and received claim.

---

[1] While the Firm and Trichter's no-evidence motion did not address Parsons's declaratory-judgment claim, the trial court's judgment granted the motion "on each and every cause of action pled by" Parsons. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001). Parsons does not challenge on appeal the trial court's judgment as to his declaratory-action claim.

## A. STANDARD OF REVIEW

After an adequate time for discovery, a party may move for a no-evidence summary judgment asserting that no evidence exists to support one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *see LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006) (per curiam). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the challenged elements of his claim. Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of probative evidence raising a genuine issue of material fact. *Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).

"Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.* Unless the nonmovant raises a genuine issue of material fact, the trial court must grant summary judgment. Tex. R. Civ. P. 166a(i).

We review a trial court's ruling on a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We view the evidence in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc.*, 206 S.W.3d at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

**B.     DTPA**

**1.     Applicable Law**

The DTPA provides protections for consumers from deceptive trade practices in the purchase and lease of goods and services. *See* Tex. Bus. & Com. Code Ann. §§ 17.46, 17.50; *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex. 1980). "Services" means "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." Tex. Bus. & Com. Code Ann. § 17.45(2); *Smith*, 611 S.W.2d at 615–16.

We liberally construe and comprehensively apply the provisions of the DTPA to promote its underlying purpose, which is the protection of consumers. *See* Tex. Bus. & Com. Code Ann. § 17.44(a). Generally, the elements of a cause of action for violation of the DTPA are that (1) the plaintiff is a consumer, (2) the defendant is subject to suit under the DTPA, (3) the defendant committed a wrongful act under the statute, and (4) the defendant's actions were the producing cause of the plaintiff's damages. *See id.* §§ 17.45, 17.46; *Amstadt*, 919 S.W.2d at 649. In relevant part, a plaintiff can maintain a DTPA suit by proving a false, misleading, or deceptive act or practice that is included in the "laundry list" of violations in Business Commerce Code § 17.46(b) and by establishing detrimental reliance. Tex. Bus. & Com. Code Ann. § 17.50(a)(1); *Brown & Brown v. Omni Metals, Inc.*, 317 S.W.3d 361, 379–80 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). An act is false, misleading, or deceptive if it could deceive an ordinary person, even if that person may have been ignorant, unthinking, or credulous. *Daugherty v. Jacobs*, 187 S.W.3d 607, 614 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

A person as defined by the DPTA may be exempt under § 17.49 of the

Business and Commerce Code under certain conditions. *See* Tex. Bus. & Com. Code Ann. § 17.49. An attorney is exempt from a claim for damages under the DTPA "based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." *Id.* § 17.49(c); *see Bellows v. San Miguel*, No. 14-000-00071-CV, 2002 WL 835667, at *8 (Tex. App.—Houston [14th Dist.] May 2, 2002, pet. denied) (mem. op.). This exemption from the DTPA, however, does not apply to an attorney's (1) express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion; (2) a failure to disclose information in violation of § 17.46(b)(24); or (3) an unconscionable act or course of action that cannot be characterized as advice, judgment, or opinion. Tex. Bus. & Com. Code Ann. § 17.49(i)(1)–(3); *see also id.* § 17.46(b)(24) (providing that "false, deceptive, or misleading acts or practices" includes failing to disclose information about the goods or services that was known at the time of the transaction with the intent to induce the consumer to enter into the transaction).

### 2.    Misrepresentation of a Material Fact

As to his DTPA claims, Parsons argues that Trichter made a misrepresentation of material fact because "Trichter promised Parsons that he would personally attend every hearing in Parsons' case" but did not attend any hearings. Parsons further argues that "Trichter also promised Parsons that he would get the results Parsons hoped for in a timely manner" but Trichter did not.

However, a breach of a promise is not a misrepresentation of a material fact. *Cf. Lindale Auto Supply, Inc. v. Ford Motor Co.*, No. 14-96-00563-CV, 1998 WL 104953, at *11 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ("To establish a cause for negligent misrepresentation . . . there must be proof of the false representation of an existing fact, not the breach of a future promise."); *Farah v.*

*Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 674–75 (Tex. App.—Houston [1st Dist.] no pet.) ("[W]e conclude that Farah's fraud and negligent misrepresentation causes of action in the underlying suit were based upon the breach of a promise and therefore contractual in nature."); *see* Tex. Bus. & Com. Code Ann. § 17.49(i)(1); *see, e.g.*, *Martinez v. Martinez*, No. 13-19-00518-CV, 2020 WL 5887587, at *5 (Tex. App.—Corpus Christi–Edinburg Oct. 1, 2020, no pet.) (mem. op.) (concluding that realtor's statement to client that realtor would help him and protect client's interest in the home was a breach of a promise and not a misrepresentation of material fact for purposes of DTPA exemption caveat); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 742 (Tex. App.—Fort Worth 2005, no pet) (concluding that a broken "agreement to furnish a certain quality of services" was not a "misrepresentation" for purposes of DTPA exemption caveat); *Conquest Drilling Fluids, Inc. v. Tri-Flo Int'l, Inc.*, 136 S.W.3d 299, 309 (Tex. App.— Beaumont 2004, no pet.) (op. on reh'g) (concluding that the alleged failure to fulfill a promise to build unit free of defects did not state violation of DTPA under § 17.46(b)(2), (5), and (7)); *see also Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13-14 (Tex. 1996) (per curiam) ("An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading[,] or deceptive act in violation of the DTPA." (quoting *Ashford Dev., Inc. v. USLife Real Estate Servs.*, 661 S.W.2d 933, 935 (Tex. 1983))); *Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 390 (Tex. App.—Texarkana 2003, pet. denied) (concluding all the representations occurred inside the bounds of the contract and gave rise to a breach of contract claim only and not a DTPA violation).

Parsons also complains that Trichter represented to Parsons that Trichter had "extensive experience" handling DWI cases for pilots and handling licensing issues with the FAA. Parsons argues this representation was false because

8

"Trichter never told Parsons he would not lose his pilot's license if he were convicted of the DWI charges filed against him." However, an omission of or a failure to disclose information does not make a separate factual statement false, and Parsons points to no evidence in support of his argument that Trichter did not have the experience Parsons claims Trichter lacked.

Because none of the evidence relied on by Parsons concerned a misrepresentation of a material fact, we conclude that the trial court did not err when it granted appellees' no-evidence motion for summary judgment as to Parsons's DTPA claim based on a misrepresentation of a material fact.

### 3. Failure To Disclose & Unconscionability

Parsons argues that appellees' no-evidence motion for summary judgment did not challenge any element of Parsons' DTPA claim based on a failure to disclose and based on unconscionable conduct, and thus, the motion is legally insufficient. We agree. Appellees' no-evidence motion states the following as to Parson's DTPA claims: "There is no evidence that Defendants made any express misrepresentation of any material fact; further, there is no evidence of any conduct of defendants that can be considered a violation of the DTPA."

A no-evidence motion for summary judgment must identify the elements of the cause of action challenged. *See* Tex. R. Civ. P. 166a(i). A claim against an attorney for failure to disclose information about services requires a plaintiff to prove: (1) he is a consumer (2) who sought or acquired (3) services (4) by purchase or lease and (5) his complaint is based on those services, (6) resulting from the attorney's failure to disclose (7) information about the services (8) that was known at the time of the transaction (9) with the intent to induce the consumer to enter into the transaction and (10) the attorney's failure to disclose was the producing cause of the plaintiff's damages. *See* Tex. Bus. & Com. Code Ann.

9

§§ 17.46(b)(24), 17.49(c), 17.50(a). Appellees' motion failed to challenge any of these elements; thus, we conclude the trial court erred when it granted appellees' no-evidence for summary judgment as to Parsons's DTPA claim based on a failure to disclose. *See* Tex. R. Civ. P. 166a(i).

A claim against an attorney for an unconscionable act or course of action requires a plaintiff to prove: (1) he is a consumer, (2) who sought or acquired (3) services (4) by purchase or lease and (5) his complaint is based on those services, (6) resulting from the attorney's unconscionable action or course of action (7) that cannot be characterized as advice, judgment, or opinion and that, (8) to the consumer's detriment, (9) takes advantage of the consumer's lack of knowledge, ability, experience, or capacity (10) to a grossly unfair degree and (11) the attorney's unconscionable act or course of action was the producing cause of the plaintiff's damages. *See* Tex. Bus. & Com. Code Ann. §§ 17.45(5), 17.49(c), 17.50(a). Appellees' motion failed to challenge any of these elements; thus, we conclude the trial court erred when it granted appellees' no-evidence for summary judgment as to Parsons's DTPA claim based on an unconscionable action or course of action. *See* Tex. R. Civ. P. 166a(i).

Appellees argues that their motion identified elements of both a failure to disclose claim and an unconscionability claim by stating that "there is no evidence of any conduct of defendants that can be considered a violation of the DTPA." However, this statement did not identify what conduct appellees challenged as to these separate DTPA claims; this assertion did not aver that there is no evidence that Tricther failed to disclose information nor did it mention that there is no evidence that Trichter did not engage in an unconscionable action or course of action. We conclude that appellees failed to challenge any specific element of Parsons's DTPA claim based on failure to disclose or unconscionability. *See id.*

10

### 4. Fraud & Fraudulent Inducement

The elements of fraud are: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank,* 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding); *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998).

A fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury. *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019). In a fraudulent-inducement claim, the "misrepresentation" occurs when the defendant falsely promises to perform a future act while having no present intent to perform it. *Id.* The plaintiff's "reliance" on the false promise "induces" the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise. *Id.*

On appeal, Parsons again argues that Trichter made a misrepresentation when: (1) Trichter promised to attend every hearing but did not, and (2) Trichter promised to get the results Parsons hoped for in a timely manner but did not. As previously concluded, a breach of a promise is not a misrepresentation of fact. Parsons also argues that Trichter "specifically told Parsons that he had 'extensive experience' handling DWI cases for pilots and handling licensing issues with the

11

Federal Aviation Administration." Parsons argues "[t]his was also false, as evidenced by Trichter failing to tell Parsons that he would not lose [his] pilot's license if he were convicted of the charges against him . . . ." However, the failure to tell Parsons this does not show that Trichter did not possess extensive experience handling DWI cases for pilots and handling licensing issues with the FAA.

We conclude that the trial court did not err when it granted appellees' no-evidence motion for summary judgment on Parsons's fraud and fraudulent inducement claims.

### 5.  Breach of Contract

Parsons argues on appeal that he presented evidence that Trichter promised Parsons that he would personally attend all hearings but failed to do so. Thus, Parsons argues, Trichter "breached this agreement . . . ." The elements of a breach of contract claim are the existence of a valid contract, the breach of performance of the contract, and damages sustained as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

Appellees argues that "none of Parsons' pleadings in the trial court or evidence offered to support his breach of contract claim reference the Attorney Fee Agreement or identify any provision that was allegedly violated." Further, appellees argue Parsons did not present any evidence that Trichter breached the attorney fee agreement. However, Parsons alleges there was an agreement between the parties in which Trichter promised to attend all hearings but failed to do so. Appellees did not argue at the trial court that there was no evidence of the existence of a valid contract based on this agreement and promise. *See* Tex. R. Civ. P. 166a(i). Accordingly, we conclude that the trial court erred when it granted appellees' no-evidence motion as to Parsons's breach-of-contract claim because

12

Parsons raised a fact issue as to the element challenged by appellees' motion. *See id.*

### 6. Breach of Fiduciary Duty

As to Parsons' claim for breach of fiduciary duty, appellees argued that there was no evidence that the fee charged was unconscionable.

To prove an action for breach of fiduciary duty, the plaintiff must establish the defendant was the plaintiff's fiduciary and that the defendant breached its fiduciary duty. *See Nugent v. Estate of Ellickson*, 543 S.W.3d 243, 256 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Priddy v. Rawson*, 282 S.W.3d 588, 599 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

"Our legal system has long recognized the vital role of the fiduciary duties that attorneys owe their clients." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 154 (Tex. 2004). "A lawyer must conduct his or her business with inveterate honesty and loyalty, always keeping the client's best interest in mind." *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561 (Tex. 2006) (citing *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 867 (Tex. 2000)). The fiduciary relationship between an attorney and his client exists as a matter of law. *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Among other things, a breach-of-fiduciary-duty claim against an attorney arises from an attorney's failing to disclose conflicts, placing personal interests over the client's interests, taking advantage of the client's trust, failing to deliver funds belonging to the client, and engaging in self-dealing. *Id.*

Because a lawyer's fiduciary duty to a client extends to contract negotiations between them, such contracts are closely scrutinized. *Anglo–Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 450 (Tex. 2011); *see Keck, Mahin*

*& Cate v. National Union Fire Ins. Co. of Pittsburgh*, 20 S.W.3d 692, 699 (Tex. 2000) ("Contracts between attorneys and their clients negotiated during the existence of the attorney-client relationship are closely scrutinized."). When self-dealing[2] by the fiduciary is alleged, a presumption of unfairness automatically arises, and the burden is placed on the fiduciary to prove that the questioned transaction (1) was made in good faith, (2) for fair consideration, and (3) after full disclosure of all material information to the principal. *Stephens Cnty. Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974); *see Houston v. Ludwick*, No. 14-09-00600-CV, 2010 WL 4132215, at *7 (Tex. App.—Houston [14th Dist.] Oct. 21, 2010, pet. denied) (mem. op.).

Unconscionability has no single legal definition and must be determined on a case by case basis in light of a variety of factors. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 498 (Tex. 1991) (Gonzalez, J., concurring). "When interpreting and enforcing attorney-client fee agreements, it is 'not enough to simply say that a contract is a contract. There are ethical considerations overlaying the contractual relationship.'" *Hoover Slovacek*, 206 S.W.3d at 560 (quoting *López v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 868 (Tex. 2000) (Gonzales, J., concurring and dissenting)). Paramount among those ethical considerations is the fiduciary obligation mandated by the professional nature of the attorney-client relationship. *See id.* at 561 (noting that attorneys have a special responsibility to maintain the highest standards of conduct and fair dealing); *see also Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex. 1964) (noting that attorney-client relationship is highly fiduciary in nature); *Dow Chemical Co. v. Benton*, 163 Tex. 477, 357

---

[2] Self-dealing can generally be defined as an occurrence in which the fiduciary uses the advantage of his position to gain a benefit at the expense of those to whom he owes a fiduciary duty. *See KMC Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 83 (Tex. 2015); *Gonzales v. Am. Title Co.*, 104 S.W.3d 588, 598 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

S.W.2d 565, 567 (1962) (noting that attorneys are members of an ancient profession with unique privileges and corresponding responsibilities).

An unconscionable fee violates public policy. *See Hoover Slovacek*, 206 S.W.3d at 562. Under the Disciplinary Rules, "[a] fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable." Tex. Disciplinary R. Prof'l Conduct R. 1.04(a).

> Two factors in otherwise borderline cases might indicate a fee may be unconscionable. The first is overreaching by a lawyer, particularly of a client who was unusually susceptible to such overreaching. The second is a failure of the lawyer to give at the outset a clear and accurate explanation of how a fee was to be calculated. For example, a fee arrangement negotiated at arm's length with an experienced business client would rarely be subject to question. On the other hand, a fee arrangement with an uneducated or unsophisticated individual having no prior experience in such matters should be more carefully scrutinized for overreaching. While the fact that a client was at a marked disadvantage in bargaining with a lawyer over fees will not make a fee unconscionable, application of the disciplinary test may require some consideration of the personal circumstances of the individuals involved.

*Id.* R. 1.04 (comment 8).

Here, Parsons provided in his declaration that he "was very concerned that my arrest would negatively affect my [FAA] pilot's license and, consequently, my ability to earn a living." Parsons's declaration further provided:

> 3. J. Gary Trichter and Trichter & Legrand, P.C. Trichter represented to me that Mr. Trichter had extensive experience handling DWI cases for pilots and dealing with the FAA. Moreover, Mr. Trichter also represented to me that he would personally appear on my behalf at any hearings and, if necessary, at trial. Based solely on Mr. Trichter's representations and my grave concern over the potential loss of my pilot's license, I agreed to hire Trichter & LeGrand.
>
> 4. Trichter and LeGrand charged me Fifty One Thousand and NO/100 Dollars ($51,000.00) to represent me on the charge of DWI 1st

offense. If 50K wasn't enough, the Trichter and LeGrand charged me an additional Five Thousand and NO/100 Dollars ($5,000.00) to represent me at in an administrative license revocation ("ALR") proceeding. My bill for my misdemeanor traffic offense defense was a staggering and unconscionable $56,000.00. Mr. Trichter never showed up personally on my behalf at any hearings.

5. Mr. Trichter was wholly unable to gain the results I had hoped for in anything resembling a timely manner as he promised. I also discovered that I had been charged over eight (8) times the going rate for this type of defense in Galveston County, Texas.

. . .

7. Ultimately, I hired a different law firm, paid that firm Ten Thousand and NO/100 Dollars ($10,000.00) for the defense and the ALR proceeding and received Pretrial Diversion. Mr. Thiessen was able to get both my ALR and criminal matter dismissed. Thereafter, I learned from the FAA that I would not have lost my pilot's license if convicted of a DWI 1st offense. Mr. Trichter did not tell me that. I am a 62-year-old man that has never been in any trouble, I could have simply paid the fine and gone on about my business without incurring Forty-One Thousand and No/100 Dollars in attorney's fees. Mr. Trichter did not tell me that.

Thiessen's declaration provided:

2. I am [a] criminal trial lawyer and the Chairman/CEO of the Thiessen Law Firm in Houston, Texas. I specialize in criminal defense and DUI/DWI cases as I am 1). Board Certified in Criminal Law by the Texas Board of Legal Specialization; 2). Board Certified in DUI Defense by the National College for DUI Defense as recognized through the American Bar Association and TBLS; and 3). Board Certified in DUI Law by the DUI Defense Lawyers Association. I have earned the American Chemical Society-Chemistry and the Law (ACSCHAL) Forensic Lawyer-Scientist designation, which is the highest form of scientific recognition available for lawyers. I am a frequent international legal seminar lecturer, author of numerous published legal articles, and a faculty member for various organizations. I am the current DWI Committee co-chair and on the Board of Directors for Texas Criminal Defense Lawyers Association (TCDLA), the 50th and current President of Harris County Criminal

Lawyers Association (HCCLA) and a Charter Member, Treasurer and Director for DUI Defense Lawyers Association (DUIDLA). I am a 9-time Texas Super Lawyer and 5-time Top 100 Super Lawyers in Houston (2017-21) and 3-time Top 100 in all of Texas (2019-21). For the past two years I have been the only criminal [defense] Super Lawyer to be listed in the Top 100 Super Lawyers in Texas and the only DWI attorney to be listed in the Top 100 Super Lawyers in Houston. I have won DWI cases from total refusals up to quadruple intoxication manslaughter;

3. I have practiced DWI defense for 16 years in Harris and Galveston County. I am familiar with attorneys' fees charged in DWI 1st Offense such as Mr. Parson's case in Galveston County, Texas. I have reviewed the relevant documents, which include the pleadings, the exhibits attached thereto, the motions on file, other documents, and has [sic] also considered the following: the time and labor involved in representing the client, the novelty and difficulty of the questions involved, the skill required to perform the legal service properly, the preclusion of the attorney from other employment, the amount in controversy, the time limitations imposed by this case on the attorney, the experience, reputation and ability of the lawyers performing the services, and whether the fee is fixed or contingent on the results obtained;

4. I have set many varying fees in DWI 1st offense cases. The fees I charge today, because of my experience and knowledge, are greater than those I originally charged. In this regard, I have set a $20,000 fee twice. The highest fee I have set was $25,000;

5. Certainly not all DWI 1st cases are the same. When taking into account what sort of fee to quote the client, I must consider: County; Court; District Attorney; whether there is an accident; a chemical test; any prior history; any special needs; occupation casualties of a conviction; temperament of client; options for plea deals on a DWI 1st, etc. . . There is no specific formula for quoting a fee for a particular client. Once I assess the case, I then must not only think about the needs of the client and how fast they want this case resolved, but also weigh the long-term options and benefits for their life;

6. Mr. Trichter and Trichter & LeGrand charged Mr. Parsons a very high fee;

17

7. Regarding the charging of a very high fee, I think it's appropriate to look at the lawyer and the client. While there are some young attorneys that should not quote high fees, there are some that can, because of their knowledge, training, and trial record. The converse is true too: not every "older" attorney may quote high fees just because they have been practicing a long time. There are plenty of lawyers, young and old, who should be quoting very high and low fees. And, there is no magic formula;

8. All that being said, to be truthful regarding my quoting of my "high" fees, those clients requested that I be present at every single setting and report to them first. Each client was aware of the possibility of reduced charges and Pre-Trial Investigation (PTI) plea deal options from the initial consultation. Each client was very wealthy and demanded my full attention and swift resolve of their case. I lived up to my promise in those cases by always appearing for their settings first, every time, and swiftly finished their cases without resulting in a conviction for DWI;

9. Taking all of the above-described factors and evidence into consideration, it is my opinion that the attorney's fees charged by Mr. Trichter and Trichter & LeGrand to Paul Parsons for his DWI 1st defense [were] not reasonable or necessary, were gross and excessive under the prevailing circumstances and were unconscionable as that term is commonly used in the Texas Rules of Professional Responsibility . . . .

Parsons and Thiessen's declarations raised a fact issue as to whether the fee charged by appellees was unconscionable because they raised a fact issue as to whether a competent lawyer could not form a reasonable belief that the fee is reasonable. *See* Tex. Disciplinary R. Prof'l Conduct R. 1.04(a). Therefore, a fact issue as to whether appellees breached their fiduciary duty to Parsons was also raised. *See Hoover Slovacek LLP*, 206 S.W.3d at 561; *Izen v. Laine*, 614 S.W.3d 775, 785 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); Tex. Disciplinary R. Prof'l Conduct R. 1.04. We conclude that the trial court erred when it granted appellees' no-evidence motion for summary judgment as to Parsons's breach-of-fiduciary-duty claim. *See Hoover Slovacek LLP*, 206 S.W.3d at 561; *Izen*, 614

18

S.W.3d at 785; Tex. Disciplinary R. Prof'l Conduct R. 1.04.

### 7. Money Had and Received

To prove a claim for money had and received, the plaintiff must establish that the defendant holds money that in equity and good conscience belongs to the plaintiff. *See Plains Exploration & Prod. Co. v. Torch Energy Advisors Incorp.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015); *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 163 (Tex. 2007) (per curiam). The defendant can assert the affirmative defense that there was a valid express contract covering the parties' dispute. *See Fortune Prod. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *Universal MRI & Diagnostics, Inc. v. Medical Lien Mgmt.*, 497 S.W.3d 653, 663 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Appellees argued in their no-evidence motion that "[a] claim based upon an action for money had and received generally cannot be brought when there is an express contract covering the subject matter between the parties, as there is in his [sic] matter." However, the existence of a written contract is an affirmative defense to a claim for money had and received that must be proved as a matter of law. *See Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017). Thus, a no-evidence summary judgment motion, which seeks to dispose of a claim, is an inappropriate vehicle for establishing an affirmative defense as a matter of law. *See Haver v. Coats*, 491 S.W.3d 877, 883 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("This motion was not an appropriate procedural vehicle for establishing their affirmative defense without a trial."); *Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680–81 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[A] defendant urging summary judgment on an affirmative defense must come forward with summary judgment evidence for each element of the defense."). We conclude the trial court erred when it granted appellees' no-evidence motion for summary judgment as to

Parsons's claim for money had and received based on the affirmative defense advanced by appellees.

Appellees also argued in their no-evidence motion that "there is no evidence that [appellees] have and hold money that is owed by or belongs to" Parsons. Contrary to appellees argument, because Parsons raised a fact issue as to whether the fee charged was unconscionable, we conclude that Parsons raised a fact issue as to whether appellees have and hold money that is owed by or belongs to Parsons.

**8.      Summary**

We conclude that the trial court erred when it granted appellees' no-evidence motion for summary judgment as to Parsons's claims for: (1) violations of the DTPA based on a failure to disclose and unconscionability; (2) breach of contract claim; (3) breach of fiduciary duty; and (4) money had and received. We sustain Parsons's sole issue in part and overrule it in part.

### III.    CONCLUSION

We reverse in part the trial court's judgment granting appellees' no-evidence motion for summary judgment as to Parsons' (1) violations of the DTPA based on a failure to disclose and unconscionability; (2) breach of contract claim; (3) breach of fiduciary duty; and (4) money had and received. We affirm in part the remainder of the trial court's judgment and remand for further proceedings.


/s/      Margaret "Meg" Poissant
Justice


Panel consists of Justices Bourliot, Poissant, and Wilson.